666 So.2d 739 (1995)
Dan H. DEW, Jr.
v.
Albert LANGFORD.
No. 92-CA-00810-SCT.
Supreme Court of Mississippi.
November 30, 1995.
*740 Michael G. Piazza, Jackson, for Appellant.
H.D. Brock, Whittington Brock Swayze & Dale, Greenwood, for Appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
Dan H. Dew, Jr., brought an action against Albert Langford claiming title to real property held by Langford. On May 20, 1992, a trial was held and Chancellor Edward G. Cortright, Jr., of the Yazoo County Chancery Court declared that Dew failed to establish that Langford held in trust for Dew title to the real property, and that Dew was not entitled to any other relief. On June 22, 1992, Dew filed a Motion to Reconsider or Alternatively for a New Hearing, which was denied by the lower court by Order dated July, 30, 1992. Dew filed his Notice of Appeal to this Court on August 6, 1992.

STATEMENT OF THE FACTS
Dan Dew purchased, in the name of a corporation, Eden Farms, Inc., a 1,135-acre tract of mainly hill land located in Yazoo County and Holmes County, Mississippi. The purchase of the land was financed by Travelers Insurance Company through a 15-year loan evidenced by a balloon note and secured by a deed of trust on the land. Travelers refused to refinance the loan when it became due and began foreclosure proceedings. On March 18, 1991, one day before the foreclosure sale on the property, Dew approached his longtime friend, Albert Langford, and proposed that Langford purchase the land at the foreclosure sale for two hundred twenty-one thousand, five hundred one dollars ($221,501.00) and then convey the property to Dew when Dew obtained new financing. Specifically, Dew offered Langford a twenty-five thousand dollars ($25,000.00) fee if he would buy the property at the foreclosure sale and subsequently sell the land to Dew for the amount of the purchase price plus any interest on the amount of the purchase. This oral offer, which later became part of the oral agreement between the two parties, is uncontroverted.
The only part of the agreement in controversy is how long Dew had to perform his part of the agreement. At trial, Langford testified that Dew gave him $25,000 in exchange for Langford's oral agreement to purchase the land and sell it to Dew at the purchase price within 90 days. Dew testified that he told Langford that it would be the end of the year (1991) before Dew could arrange financing to buy the property back and that no absolute deadline for the repurchase was ever mentioned.
On the night of March 18, 1991, Langford called Dale McBride, president of the Durant, Mississippi branch of Merchants and Farmers Bank. McBride testified that during the telephone conversation, Langford indicated that he needed a loan in order to keep his friend from losing some property at a foreclosure sale. Also, McBride testified that during that conversation, Langford stated that he needed the loan for just 90 days, because it would be paid back in less than that time as he was going to let Dew have the money until Dew could arrange financing elsewhere.
On the morning of March 19, 1991, Dew gave Langford $25,000 in cash pursuant to their oral agreement and accompanied Langford to the bank. At the bank, Langford signed a master note for a loan of up to $225,000.00 and assigned to the bank a savings account worth $34,486.96 and two certificates of deposit, each worth $100,000.00. McBride made this note for a term of 105 days, instead of the 90 days requested by Langford, so that the note would not come due at the end of a month. Later that same day, Langford purchased the property at the foreclosure sale without the benefit of a title *741 check or opinion. Dew failed to inform Langford at the time of the purchase or any time that the 1989 and 1990 ad valorem taxes on the property had not been paid. Dew also admitted that he contributed none of the $221,501 that Langford used to purchase the property at the foreclosure sale.
Langford testified that during each conversation that he and Dew had from March through June, Langford would ask Dew if he was getting the permanent financing set up and inquire about Dew paying the delinquent taxes. After Dew failed to obtain any financing during the first 105-day loan which was due on July 5, 1991, Dew asked Langford for additional time to obtain a loan because he had not had time to do so at that point. Upon hearing about Dew's farming problems, Langford agreed to give Due an extension, and he and Dew went to the bank in Durant on July 12, 1991, whereupon Langford renewed his note for 60 days until September 5, 1991. Dew paid all of the interest which had accrued from March 19 through July 12. During the second loan period, Langford reminded Dew on occasions when they were together that Dew had to go ahead and get the permanent financing approved. When the second note became due on September 5, Dew told Langford that Dew's wife had cancer, he had not had time to get permanent financing, and that he needed yet another extension. Langford agreed to give Dew a second extension. In September, Dew paid the interest that had accrued since July on the second note, and Langford renewed or extended the note for three more months until December 10, 1991. Langford testified that he made many calls to Dew over the period from March through December and that most of the calls related to Dew getting the taxes paid and obtaining permanent financing, although some of the calls did relate to farming operations and obtaining fish to cook.
As the due date for the third note drew near, Langford tried unsuccessfully to contact Dew by telephone. Langford called Dew's wife on December 5, 1991, and Dew's daughter-in-law on December 3, 1991, and left messages with both of them to deliver to Dew that he wanted to close the deal at the end of this note period. Langford also testified that he told Dew's wife on December 5, 1991, that he did not want to renew the note any further. When Langford again called Dew's residence on December 6 and reached Dew's wife, Dew's wife told Langford that she had delivered the message to her husband and did not know why he had not contacted Langford.
Langford paid off the note on its due date, December 10, 1991, in the amount of $225,585.30, which included interest since September. That same day, Langford put locks on gates located upon the property in an effort to keep hunters out of the property since he was going to try to market the property as a hunting place. Also that day, Langford put "posted" signs and "for sale" signs on the property and placed advertisements in several newspapers requesting $350 per acre for the land. At this time, Dew had finished harvesting crops that he had planted on a small portion of the land. Later that night, Dew called Langford inquiring about why "Dew's place" was for sale. Langford responded by telling Dew that Langford had paid off the note that day and had paid $10,000 to redeem a substantial portion of the delinquent taxes on the land. The total taxes that were paid by Langford amounted to $10,303.20. Langford further explained that Dew could have bought the land for Langford's purchase price plus accrued interest before Langford paid the note, but now the price was higher because of additional costs and expenses that Langford had incurred. Dew offered to pay Langford for all the taxes that Langford had redeemed, all expenses, and $10,000 more for an extra 10 days to obtain financing. Langford refused Dew's offer and, in turn, offered to sell the property to Dew, but not at the original purchase price because of the additional investments which Langford had made into the property. Dew testified that Langford offered the property to him for $375 per acre if Dew tendered the money before anyone else did. Langford, however, testified that he never told Dew what price it would take to buy the land back.
At trial, Dew admitted that from March through December he made no application to *742 any lending institution to obtain financing, but only tried one time to get a broker to look at the property. During that same time, Dew never tendered to Langford the money required to reimburse Langford for the purchase price of the land. However, Dew testified that at no time from June through December 6, 1991, did Langford request the purchase price of the property. Langford, on the other hand, testified that upon each renewal of the note, he made an oral demand upon Dew to pay the purchase price so that Langford could cancel his notes.
Dew, through his complaint filed in the Chancery Court of Yazoo County, Mississippi on December 31, 1991, sought an order (a) declaring that Langford held title to the subject property as constructive trustee for Dew and ordering the sale of such property to Dew at the agreed upon price; or (b) alternatively, an order for the sale of the property and a distribution of the proceeds between Dew and Langford in proportion to the amounts invested in the property and the compensation previously received by Langford; and (c) awarding Dew a reasonable amount for improvements to the subject property while legal title was held by Langford.
Langford timely filed his answer to Dew's complaint alleging certain affirmative defenses, including § 15-3-1 of the Mississippi Code Annotated of 1972, commonly known as the statute of frauds, and also alleging that Dew was attempting to enforce an oral contract which Dew had breached. Langford in his counterclaim also sought damages which the trial court denied.
On the date of the trial, Dew sought a continuance, which the court denied based on the fact that the trial date had been set by an order agreed to by both parties and that Dew stated insufficient grounds for a continuance.
Following the trial, the court entered an opinion dated June 4, 1992, finding that: (a) "the establishment of a constructive trust is an equitable remedy and, to obtain such relief, plaintiff must offer to do equity. This he clearly has not done," (b) Dew was given an oral option by Langford to buy the subject lands for a period of ninety days and Dew failed to exercise that option, which, on its own, nonetheless would have been unenforceable as falling within the statute of frauds, and (c) Dew never made any application for a loan to comply with his oral agreement with Langford, and Dew never tendered to Langford the purchase price agreed to in the oral agreement.

I. WHETHER AN ORAL AGREEMENT FOR THE SALE OF LAND IS BARRED BY THE MISSISSIPPI STATUTE OF FRAUDS, AND, IF SO, WHETHER THE TRIAL COURT ERRED IN FINDING THAT SUCH ORAL AGREEMENT DID NOT GIVE RISE TO A CONSTRUCTIVE OR RESULTING TRUST?

Standard of Review
This Court will not disturb findings of the chancellor unless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Tinnin v. First United Bank of Mississippi, 570 So.2d 1193, 1194 (Miss. 1990). Where there is substantial evidence to support the chancellor's findings, this Court is without the authority to disturb his conclusions, although this Court might have found otherwise as an original matter. In re Estate of Harris, 539 So.2d 1040, 1043 (Miss. 1989).

Analysis
At trial, Langford asserted as his defense to the oral agreement the statute of frauds. Section 15-3-1 of the Miss. Code Ann. requires that contracts for the sale of land be in writing, as follows:
An action shall not be brought whereby to charge a defendant or other party:
.....
(c) upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year ... unless, ... the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.
*743 Likewise, the creation of trusts concerning land must be in writing as provided for in Section 91-9-1 of the Miss. Code Ann., as follows:
Hereafter all declarations or creations of trusts or confidence of or in any land shall be made and manifested by writing, signed by the party who declares or creates such trust, or by his last will, in writing; or else they shall be utterly void. Every writing declaring or creating a trust shall be acknowledged or proved as other writings, shall be lodged with the clerk of the chancery court of the proper county to be recorded, and shall only take effect from the time it is so lodged for record. Where any shall arise or result, by implication of law, out of a conveyance of land, such trust or confidence shall be of the like force and effect the same as it would have been if this statute had not been passed.
Miss. Code Ann. § 91-9-1 (1972). Dew did not contend that Langford entered into any written contract concerning the sale of the subject land. Thus, the trial court was correct in its declaration that the oral agreement fell within the statute of frauds and was, accordingly, unenforceable. However, Dew contends that the oral agreement between him and Langford gave rise to a resulting or implied trust and, as such, was enforceable as an exception to the statute of frauds as provided for in the last sentence of § 91-9-1, supra.
A constructive trust must be established by clear and convincing proof. Alvarez v. Coleman, 642 So.2d 361, 368 (Miss. 1994); Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1034 (Miss. 1990); Allgood v. Allgood, 473 So.2d 416, 421 (Miss. 1985). The trial court found that the facts did not establish a constructive trust. In reaching this conclusion, the chancellor reasoned as follows:
I am convinced from the evidence that the agreement was that Plaintiff had 90 days from the date of foreclosure within which to purchase the property for the agreed upon consideration. Plaintiff's failure to consummate the agreement within that period relieved Defendant of any further obligation. To impress a constructive trust, there would have to be some wrong committed by Defendant and an unjust enrichment on his part. Those elements simply are not present. There has been no wrongful acquisition or wrongful detention of the property by Defendant. By his own admission, Plaintiff, as late as the time of trial, had not tendered to Defendant that which he had obligated himself to pay. The establishment of a constructive trust is an equitable remedy and, to obtain such relief, Plaintiff must offer to do equity. This he clearly has not done.
From the testimony given and the evidence presented at trial, it appears that substantial evidence existed with which to support the chancellor's findings. The primary factual dispute at trial centered on the time frame within which Dew had to purchase the property from Langford. Dew testified that no absolute deadline for the repurchase was ever agreed upon by the parties. Langford, however, testified that Dew gave him $25,000 in exchange for Langford's oral agreement to purchase the land at the foreclosure sale and sell it within 90 days to Dew at the purchase price. Lending support to Langford's testimony, McBride, president of the bank, testified that during his and Langford's telephone conversation on the night of March 18, 1991, Langford stated that he needed the loan for just 90 days because it would be paid back in less than that time. Also, the fact that Langford originally obtained financing for his loan for only a 105-day period[1] lends credibility to his version of the agreement. If the time period within which the parties had agreed to allow for the purchase was longer in duration, it would only seem logical that Langford would have obtained a loan for the duration of such a period.
No constructive trust existed because Dew failed to establish by clear and convincing proof that some wrong was committed by Langford and that Langford was unjustly enriched. Dew, not Langford, originated the arrangement upon which this lawsuit is based. Dew approached his longtime friend *744 Langford on the eve of the foreclosure sale and offered Langford $25,000 if he would buy the property at the foreclosure sale and subsequently sell the land to Dew for the amount of the purchase price plus any interest on the amount of the purchase. Dew, not Langford, failed to perform the agreement, as determined by the chancellor, by not tendering to Langford the purchase price within 90 days of the foreclosure sale. When the 90-day period had passed and Langford during that time did nothing to prevent Dew from performing his side of the agreement, Dew's failure to purchase the land within that time frame relieved Langford from any further obligation under the agreement. The $25,000 consideration that Dew paid Langford in exchange for Langford's oral agreement to sell Dew the property within 90 days was no longer at issue. Dew does not attempt to argue that the $25,000 was part of the purchase price; rather, Dew admitted that he contributed none of the $221,501 that Langford used to purchase the property at the foreclosure sale.
The facts and evidence presented clearly establish that a constructive trust was not established. Therefore, this issue is without merit and the lower court should be affirmed.

II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE ORAL AGREEMENT BETWEEN THE PARTIES CONSTITUTED AN OPTION CONTRACT TO PURCHASE LAND.
Dew argues that the trial court erred in finding that the agreement between the parties constituted an option contract to purchase land, when there was no evidence or testimony proffered in court to that effect, and when it was never claimed to be an option contract in any of the pleadings presented to the trial court. The relevant portion of the chancellor's opinion concerning an option agreement is as follows:
What I see here is an option agreement. Defendant, for and in consideration of $25,000, agreed to sell the land to Plaintiff within a 90-day period, provided Plaintiff pay him the amount he paid at the foreclosure sale. Plaintiff failed to exercise his option within the period provided, and Defendant's obligation to Plaintiff ceased. Even if the two payments of interest made by Plaintiff on Defendant's loan constituted consideration for the extension of the option, Defendant's obligation ceased with the end of the last extension, which was December 10, 1991. Independently of the agreement being but an option that expired unexercised after the 90-day option period, there is another reason why Plaintiff's action must fail. That is, the agreement falls within the statute of frauds and is thus unenforceable.
Several cases support the chancellor's finding.
In Walters v. Patterson, 531 So.2d 581, 582 (Miss. 1988), the plaintiff, faced with imminent foreclosure of a deed of trust, agreed to have the defendants pay the debt and subsequently conveyed the property to the defendants. The parties agreed that the plaintiff had an oral option to repurchase the land. Id. Even though title was vested in the defendants, the plaintiff stayed in possession of the property, built on it, planted crops on the property, and did other acts on the property. Id. This Court held that the plaintiff, who sought reformation of the deed and who claimed an oral option to purchase the property, was required to tender payment for the property within a reasonable time. Id. at 584. The plaintiff failed to make such payment. The Court also noted that the oral contract fell within the statute of frauds. See also, Campbell v. Bright, 87 Miss. 443, 443-444, 40 So. 3, 3-4 (1906) (An oral agreement made by one who purchases land at a foreclosure sale to reconvey the property to the former owner upon payment by the former owner of the indebtedness within a specified time is within the statute of frauds.); Lewis v. Williams, 186 Miss. 701, 713, 191 So. 479, 481 (1939) (The oral promise of persons holding title to land under forfeited tax patents to reconvey the land to the former owners upon their repayment of the amount paid for the patents did not create a constructive trust and was unenforceable under the statute of frauds.).
Langford did not assert at trial that the agreement was an option agreement because *745 he was not required to do so. "To overturn a deed absolute on its face, the challenger must overcome the presumption in favor of the holder of the deed." Walters, 531 So.2d at 584. Because the oral agreement between Dew and Langford concerned the sale of land, it was Dew who had the burden of proving an exception to the statute of frauds by asserting the equitable remedy of constructive or resulting trust. Langford only had to assert the affirmative defense of the statute of frauds. This he did. Dew had to prove that the agreement was a trust created by operation of law; Langford did not have to prove that the oral agreement was an option contract.
Therefore, the lower court was not in error and should be affirmed.

III. IF, IN FACT, THE ORAL AGREEMENT IS HELD TO BE UNENFORCEABLE DUE TO THE STATUTE OF FRAUDS, WHETHER IT IS UNJUST ENRICHMENT TO ALLOW THE APPELLEE TO RETAIN THE PROFITS OF THAT AGREEMENT WHILE CLAIMING THE PROTECTION OF THE STATUTE.
Dew asserts that he should get all of the money that he expended on the parol agreement, thereby not allowing Langford to be unjustly enriched by Langford's refusal to perform the unenforceable oral agreement. Unjust enrichment has been defined as follows:
The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.
Hans v. Hans, 482 So.2d 1117, 1122 (Miss. 1986) (citing 66 Am.Jur.2d Restitution and Implied Contracts, § 11 (1973)). To determine if Langford would be unjustly enriched if allowed to keep Dew's money and the land, this Court must "view the obvious and see whether a resulting or constructive trust may be implied under the facts of this case." Hans, 482 So.2d at 1122.
In asserting unjust enrichment, Dew cites to the case of Hardy v. Candelain, 204 Miss. 328, 37 So.2d 360 (1948). In that case, this Court cited the principle of law that "where payments are made by a purchaser under a parol contract for the sale of land, and the vendor refuses to complete the transaction by the execution of the necessary deed, the purchaser may recover the amount or amounts paid as for money had and received." Hardy, 204 Miss. at 332, 37 So.2d at 361 (citing Milam v. Paxton, 160 Miss. 562, 134 So. 171, 172 (1931)). The Court held that while an oral agreement for the sale of land was not specifically enforceable under the statute of frauds, upon the vendor's refusal to comply with the agreement, the purchaser could recover money paid as part of the consideration under the agreement. Id. This case, however, can be distinguished from the case at bar, because Langford was willing and able to comply with the agreement of the parties. At no time during the originally agreed upon time period, or during the two subsequent extensions of time which Langford gratuitously allowed for Dew, did Langford refuse to sell the land to Dew at the price paid at the foreclosure sale.
A case clearly on point and which supports the lower court's decision to allow Langford to retain the profits of the agreement is Vanlandingham v. Jenkins, 207 Miss. 882, 43 So.2d 578 (1949). In that case, this Court announced that "if the vendor does nothing to avoid the contract, but on the contrary is both able and willing to perform, the vendee cannot recover what he has paid." 207 Miss. at 892, 43 So.2d at 581.
The facts in the case at bar do not demonstrate that Langford was unjustly enriched.

IV. WHETHER IT WAS ERROR FOR THE TRIAL COURT TO FIND THAT THE APPELLANT NEVER OFFERED TO DO EQUITY.
Dew contends that the lower court erred in finding that Langford never offered *746 to do equity in view of the fact that when Langford informed Dew that he would not sell the land at the agreed upon price, Dew offered to pay the agreed upon price plus an additional ten thousand dollars ($10,000) within 10 days. This offer was refused by Langford as being too late. While it is true that Dew offered to pay Langford $10,303.20 for all the taxes that Langford had redeemed, the purchase price of the land, and $10,000 more in exchange for an additional 10 days to obtain financing, this offer was not in accordance with the original agreement. Dew made this offer on the day that Langford paid the note on the property. That same day, December 10, 1991, was the due date for the second renewal or extension of Langford's note. The only thing that Langford was required to accept from Dew in order to comply with their agreement at that time was the full purchase price of the land along with interest which had accrued since the last interest payment. Instead of tendering the purchase price, Dew sought an extension as he had done twice before. Langford was under no obligation to grant another extension to Dew.
Dew, on the other hand, failed to pay the purchase price within the 90 days as originally agreed, failed to pay the purchase price during the two periods of extension gratuitously granted by Langford, failed to redeem the delinquent ad valorem taxes, and failed to pay interest which had accrued on Langford's note from September through December 10.
Courts of equity still follow the maxim that "he who seeks equity, must do equity." O'Connor v. Dickerson, 188 So.2d 241, 246 (Miss. 1966). From the testimony given and evidence presented at trial, it appears that substantial evidence existed to support the chancellor's finding that Dew failed to do equity and such finding is not manifestly wrong.

V. WHETHER IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO DENY A CONTINUANCE.
Dew argues that the trial court abused its discretion in failing to grant Dew a continuance on the date set for trial. However, Dew's motion for a continuance was not included as a part of the record, and all that this Court knows is that it was filed and before the trial court. Concerning matters not appearing in the record, this Court has held:
The burden rested upon appellant to see to it that the record contained all data essential to an understanding and presentation of matters relied upon for reversal on appeal. Willenbrock v. Brown, 239 So.2d 922 (Miss. 1970).
This Court may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record. It must be presumed that the rulings of the trial court were correct, and such presumption will prevail, unless the actual record supports the contrary view.
Shelton v. Kindred, 279 So.2d 642, 644 (Miss. 1973). See also Britt v. State, 520 So.2d 1377, 1379 (Miss. 1988) (the Court must decide each case by the facts shown in the record and not by the assertions in the brief).
In addition, this assignment of error is unsupported by argument and authority. This Court does not, generally, consider assignments of error unsupported by argument and authority. Ramseur v. State, 368 So.2d 842, 844 (Miss. 1979); accord Smith v. Dorsey, 599 So.2d 529, 532 (Miss. 1992) ("[F]ailure to cite any authority can be treated as a procedural bar, and this Court is under no obligation to consider the assignments.").
Even if Dew was not procedurally barred from asserting this assignment of error, a trial court has the inherent right to control its trial docket and is afforded reasonable latitude regarding the setting and continuance of cases. Watts v. Pennington, 598 So.2d 1308, 1312 (Miss. 1992) "This Court will not reverse the denial of a continuance unless it is satisfied that prejudice resulted." Cherry v. Hawkins, 243 Miss. 392, 397, 137 So.2d 815, 816 (1962).
Therefore, especially in light of the fact that the case was set by an agreed order, it does not appear that the trial court abused its discretion in denying Dew's continuance.

CONCLUSION
Based upon the evidence and testimony presented at trial, it is apparent that the *747 chancellor was not manifestly wrong in finding that the oral agreement was within the statute of frauds and that the facts did not establish a constructive or resulting trust. The trial court based its decision that no constructive trust existed upon Dew's failure to establish by clear and convincing proof that some wrong was committed by Langford or that Langford was unjustly enriched. Dew contributed none of the money that Langford used to purchase the property at the foreclosure sale.
Because the oral agreement between Dew and Langford concerned the sale of land, it was Dew who had the burden of proving an exception to the statute of frauds by asserting the equitable remedy of constructive or resulting trust. Langford only had to assert the affirmative defense of the statute of frauds.
Dew failed to pay the purchase price within the 90 days as originally agreed, failed to pay the purchase price during the two periods of extension gratuitously granted by Langford, failed to redeem the delinquent ad valorem taxes, and failed to pay interest which had accrued on Langford's note from September through December 10. It appears that substantial evidence existed to support the chancellor's finding that Dew failed to do equity and such finding is not manifestly wrong.
Dew cited no authority to support his assertion that it was an abuse of discretion for the trial court to deny a continuance. Also, Dew's motion for a continuance did not appear in the record. The trial court's decision to deny a continuance based on its finding that no prejudice would result was not an abuse of discretion.
For the aforementioned reasons the lower court should be affirmed in all aspects.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE, PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] McBride made this note for a term of 105 days, instead of the 90 days requested by Langford, so that the note would not come due at the end of a month.