CHANDLER, J.,
for the Court:
¶ 1. The issues surrounding this case center upon Trilogy Communication, Inc. [Trilogy] seeking, for the third time, appellate review concerning the award of damages arising from its breach of a contract to lease tractor-trailers from Thomas Truck Lease, Inc. [Thomas]. In connection with this appeal, Trilogy argues that the trial court erred on the following three issues:
I. Whether a prior holding by this Court mandated that lease proceeds, from leases executed by Thomas with third parties subsequent to the jury trial and award of damages, should have been deducted from the damages award;
II. Whether the Circuit Court erred in declining to order Thomas to pay Trilogy interest earned on funds that Thomas obtained from insurance companies for wrecked equipment and sales of equipment;
III. Whether the Circuit Court erred in awarding Thomas attorneys’ fees.
FACTS
¶ 2. Trilogy leased tractor trailer rigs from Thomas. In accordance with the contract, Thomas purchased the vehicles, leased them to Trilogy and commenced performance under the servicing provisions of the contract. Trilogy then defaulted by failing to make lease payments. The contract provided that in the event of breach, Trilogy would “buyout” by tendering to Thomas the purchase price of the vehicles, less any depreciation in the vehicles’ value, and thereby obtain titles to the vehicles. The contract further provided that Trilogy would be liable for Thomas’s attorney’s fees incurred in enforcing the contract. Following the breach, Trilogy refused to tender the purchase price for the vehicles. Consequently, Thomas re *883 possessed the vehicles and brought suit against Trilogy.
PROCEDURAL HISTORY
¶ 3. On August 5, 1992, a jury awarded Thomas $1,693,831.12 in damages. Of that figure, $479,816.48 was in monetary damages which were based upon unpaid invoices for lease payments, fuel and services provided by Thomas before the breach. Additionally, the jury found that pursuant to the “buy-out” provision of the contract, the vehicles’ initial purchase price was $1,429,821.14, but that damages had been mitigated by $215,806.42 due to the vehicles’ depreciation. In calculating this figure for mitigation, the jury considered the value of third party leases that Thomas entered into with third parties after Trilogy breached and refused to comply with the contract’s “buy-out” provision. However, the jury refused to accept Trilogy’s argument that damages should be found to be further mitigated by proceeds from future third party leases. Thomas was also awarded $170,000 in attorney’s fees. The judgment provided that upon tendering the amount of the purchase price, less depreciation, as calculated by the jury, Trilogy was to receive title to the vehicles,
provided, however, in the event any of the tractors and trailers have been sold, wrecked or other wise disposed of, the proceeds of such sale or disposition shall be delivered to Trilogy Communications, Inc., upon receipt of payment in full of the judgment consent [sic].
¶ 4. Trilogy appealed and asserted, inter alia, that the damage award was unsupported by the facts and amounted to a “double windfall.” Trilogy argued that the jury failed to consider the profits that Thomas could earn by leasing the vehicles to third parties in the future. In support of this contention at trial, Trilogy put forth the testimony of an accountant who stated that based upon what Thomas could reasonably expect to earn from these vehicles during their service-lives, it would suffer no loss whatsoever, and in fact would actually earn more profit on the subsequent leases than it would earn had Trilogy never breached. Like the jury, this Court rejected Trilogy’s argument in Trilogy’s initial appeal of this matter:
As Thomas correctly points out, there is no windfall or double recovery, as the final judgment orders Thomas to deliver the trucks to Trilogy as soon as Trilogy pays the final judgment. Instead of paying the judgment, Trilogy chose to litigate whether they were even liable under the lease and have therefore not received the trucks. Subsequent mitigation by re-leasing; the trucks has no bearing on the issue of a double recovery as Trilogy only paid Thomas the agreed amount they owed under the lease agreement which was $479,816.48.
Trilogy Communications, Inc. v. Thomas Truck Lease, Inc., No. 92-CA-01266 (Miss.Ct.App. Sept. 17, 1995)(unreported opinion). In other words, Trilogy was to comply with the judgment by paying the agreed upon purchase price for the vehicles; Thomas would then tender the vehicles to Trilogy to use them for whatever purpose it deemed best.
¶ 5. Trilogy did not comply with the judgment. Instead Trilogy brought a motion in the circuit court pursuant to M.R.C.P. 60(b) asserting the award of damages had been partially satisfied by the proceeds from post-judgment third party leases, and that the damages were therefore unsupported and a “penalty” because Thomas had entered into the subsequent leases. The subtle distinction between Trilogy’s position in its first appeal and in this motion was that upon appeal it contended any post-judgment proceeds from third party leases should apply to *884 mitigate damages, while in its motion it contended these post-judgment proceeds from third party leases should be applied to partially, or totally, satisfy the judgment. The circuit court denied the M.R.C.P. 60(b) motion on the grounds that it “relates to and requests relief concerning issues previously tried before a jury.” Trilogy then perfected a second appeal to this Court upon its M.R.C.P. 60(b) motion.
¶ 6. This Court affirmed the circuit court finding that the first Court of Appeals opinion, of September 17, 1995, foreclosed Trilogy’s continued assertion that it had any legal interest in the proceeds of post-judgment third part leases. Trilogy Communications Inc. v. Thomas Track Lease, Inc., 733 So.2d 313, 317, ¶ 7 (Miss.Ct.App.1999). This Court went on to state,
Both the final judgment and the amended final judgment expressly provided that Trilogy was to pay the amount it owed to Thomas prior to the delivery of equipment or crediting any amounts to Trilogy. The fact that Trilogy has not paid the judgment as ordered renders its Rule 60(b) motion untimely because the judgment is not satisfied, released, or discharged. Although a non-breaching party to a contract should only receive damages necessary to place him in the same position he would have been in had the contract been performed, Trilogy ignores the fact that the purpose of the buy-out clause was to avoid the exact situation the parties are now in. Since Trilogy breached the contract and refused to perform under the requirements of the lease, Thomas had to recover and manage the equipment. In order to put Thomas in the “same position,” Trilogy must satisfy the judgment, i.e. purchase the equipment. Once Trilogy pays the amended final judgment, it will be entitled to credit for equipment that has been sold, leased, or otherwise disposed of not already credited against the judgment.
Trilogy Communications Inc. v. Thomas Truck Lease, Inc., 733 So.2d at 317 (¶ 8).
¶ 7. Thereafter, Trilogy tendered to Thomas $3,036,755.31 to comply with damages, interest and statutory penalties. Thomas then tendered to Trilogy $597,936.05 with the representation that this amount constituted all credit Trilogy was due under the judgment which stated after Trilogy tendered the damage award it would be entitled to the vehicles or the proceeds from any sale or other disposition of them. Trilogy admitted that Thomas had finally disposed of all the vehicles either by selling them or settling insurance claims for those lost in accidents and that $597,936.05 is a correct total of the proceeds.
¶ 8. However, because of the passage of time from the judgment and Trilogy’s compliance with it, Trilogy received less in the amount of credit than it would have received had it promptly complied with the judgment. The jury verdict was to enforce the “buy-out” clause, in which the parties set the remedy for breach to be an agreement to sell and buy the specific vehicles involved in the contract. Thus, at the time of the verdict, the jury set the value of the vehicles, less their depreciation which was calculated from leases to third parties, at $1,429,821.14. The judgment conformed to the verdict by setting this portion of damages at $1,429,821.14, and Trilogy was to receive $1,429,821.14 in value from the vehicles and/or a credit for any vehicles that could not be transferred. Yet, when Trilogy finally complied, it only received $597,936.05 in final disposition proceeds because the vehicles had depreciated.
¶ 9. Following its compliance with the judgment, Trilogy filed an action on October 28, 1999, in the Circuit Court of Ran *885 kin County, though all prior proceedings had been in the Circuit Court of Lowndes County. This action did not directly address the dichotomy in the amount of credit Trilogy would have received with prompt compliance compared to that which it actually did receive. Instead, Trilogy chose to continue its pursuit of the proceeds from the third party leases. The action sought, inter alia, “all the proceeds from the lease of the equipment from and after the date of the jury verdict until such time as the equipment was sold or otherwise disposed of, in which instance, Thomas is responsible for payment of the sale or disposition proceeds to Trilogy.” The action further sought 8% interest on all funds received by Thomas from the date on which it sold any individual piece of equipment based upon the theory that Thomas held such funds in a “bailment and/or trust relationship.”
¶ 10. Approximately two months later, on October 18, 1999, Trilogy returned to the Lowndes County Circuit Court and filed a motion “seeking credit against judgment based on lease proceeds.” In this motion, subsequent pleadings and oral argument in Lowndes County Circuit Court, Trilogy returned to its initial position, that all lease proceeds, regardless of whether they were generated before or after the Lowndes County Circuit Court judgment became final, rightly belonged to it. Shortly after Trilogy returned to the Lowndes County forum, the Rankin County Circuit Court transferred the action initiated there to the Lowndes County Circuit Court upon a finding that court had exclusive jurisdiction over the matter.
¶ 11. Trilogy’s motion in the Lowndes County Circuit Court and action in the Rankin County Court were both premised upon the last sentence of the above quoted portion of this Court’s second opinion in this matter. “Once Trilogy pays the amended final judgment, it will be entitled to credit for equipment that has been sold, leased, or otherwise disposed of not already credited against the judgment.” Trilogy Communications Inc., 733 So.2d at 317 (¶ 8). Trilogy asserted in Lowndes County, and continues to assert in this Court, that under “the law of the case” Thomas was required to offset from the damages award all third party lease proceeds. The circuit court expressed its disagreement with this position by stating,
Then you’re telling me ... what I’m hearing is that Thomas could, hypothetically, owe Trilogy for Trilogy’s breach, if Thomas was good enough in using these trucks during that period of time and obtaining or making money on them. So what I’m hearing is, is that basically Trilogy could come out not owing Thomas anything for the breach, Thomas would owe Trilogy.
DISCUSSION
I. LAW OF THE CASE
¶ 12. The resolution of this case must rest upon the jury’s decision as reflected in the judgment of the Circuit Court of Lowndes County. Once a judgment becomes final, it is dispositive as to all issues arising from a claim that were, or could have been, asserted by the parties to litigation. Dunaway v. W.H. Hopper & Associates, Inc., 422 So.2d 749, 751 (Miss.1982). See also Riley v. Moreland, 537 So.2d 1348, 1354 (Miss.1989); McCorkle v. Loumiss Timber Co., 760 So.2d 845, 854-856, ¶¶ 35-48 (Miss.Ct.App.2000). In this case, the jury found for Thomas, and against Trilogy, on two separate issues. First, the jury’s verdict awarded Thomas $479,816.48 in monetary damages for unpaid invoices, or “sums due,” for already supplied fuel and leased vehicles. Second, the jury’s verdict enforced the contract’s “buy-out” clause which required Trilogy purchase the vehicles at their purchase *886 price less the vehicles’ depreciation. In calculating this depreciation, the jury relied in part upon third party leases that had been entered into, but the jury rejected Trilogy’s argument that the proceeds of future leases should be considered in the mitigation of damages.
¶ 13. Trilogy urges that this Court’s second opinion altered the circuit court’s judgment based on this verdict. Trilogy misreads the opinion. The opinion stated that Trilogy had already attempted to “re-litigate the issue of damages seven times, and in a previous decision, we made it clear the issue of damages in this case had already been litigated.” Trilogy Communications Inc., 733 So.2d at 317 (¶ 7). The dissent argued that Trilogy’s claim for credit based upon post-judgment third party leases should be considered. Id. at 318-19, ¶ 17 (Miss.Ct.App.1999). The majority opinion, however, rejected Trilogy’s claim that the judgment had been satisfied in whole or in part. Trilogy seeks to take the Court’s use of the word “leases” out of context. The circuit court and the parties have consistently noted that post-judgment leases could in effect work to be a final disposition of some or all of the vehicles, and that the leases would in that way have an effect on the amount of funds generated by a final disposition. In fact, prior to this Court’s second decision, that very issue was pending in the circuit court. Our decision reflected that while the amount of credit Trilogy would ultimately receive was dependent upon 'the final disposition, the final calculation of the proceeds had not been made. However, this Court has never found that Trilogy was entitled to any proceeds from post-judgment third party leases. Rather, this Court found the exact opposite: that Trilogy lost on this issue at trial, and that is the law of the case.
¶ 14. There is no doubt that Trilogy’s refusal for nearly ten years to pay the damages awarded by the jury has resulted in it receiving less benefit than it would have received had it promptly complied. Likewise, Thomas does not dispute that it leased the vehicles and made some return thereon. However, it is curious that Trilogy would ask this Court for relief because if it had wanted the vehicles and the benefit obtained from them, all it had to do was to pay the judgment. Trilogy admits it “could have bought the equipment and appealed.” Trilogy cites no authority or legal principle that applies to adjust the original judgment. Perhaps the situation is akin to the general rule that courts may order such relief as to give -full justice in cases arising under specific performance, and courts may, in addition to ordering an agreed upon transfer of property, also award lost profits or compensation for depreciation. See e.g. 71 AM. JUR. 2D § 271 (1973). However, in this case Thomas did not breach the contract, nor has it done anything to delay or prevent the transfer. Rather, any loss of benefit has occurred solely from Trilogy’s own actions.
¶ 15. Moreover, even assuming that this Court had the power to alter at this date a previously affirmed judgment, Trilogy fails to indicate how we should fairly reallocate assets of the parties. In essence, Trilogy asks this Court to order Thomas to act as Trilogy’s leasing agent. Yet, to do so would impose upon Thomas not only the overhead costs of obtaining, such leases but also deny it any profit it might derive from such activity. Moreover, during the pen-dency of Trilogy’s appeals, Thomas has not had access to the $1,429,821.14, and to give Trilogy the relief it requests would require this Court assume Thomas could have earned no more than that accumulated from statutory interest.
¶ 16. Therefore, this issue is without merit, and under the law of the case Trilo *887 gy has no interest in the post-judgment third party leases.
II. INTEREST ON PROCEEDS OF FINAL DISPOSITION
¶ 17. Trilogy’s argument is that Thomas held the proceeds of the final dispositions of the vehicles in an implied trust for Trilogy’s benefit. Throughout the time period from the judgment to Trilogy’s compliance, Thomas disposed of vehicles through individual sales or settled claims for individual wrecked vehicles. Trilogy admits that the aggregate of these transactions is $597,936.05. However, it argues that Thomas should have held the proceeds from each individual disposition in interest-bearing trust accounts for it.
¶ 18. The equitable doctrines of implied and constructive trusts are applied to situations where one party holds title to property with an equitable duty to convey the property to another. Allgood v. Allgood, 473 So.2d 416, 421 (Miss.1985). See also, Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 151 (Miss.1955). Our supreme court has held that a constructive trust cannot be established until at least some portion of the purchase price or the property has been conveyed. Dew v. Langford, 666 So.2d 739, 744 (Miss.1995). In that case, Dew paid Langford $25,000 to buy a piece of land with the oral understanding that after Langford bought the property, Dew would pay Langford whatever price he had to pay for the property, and Langford would keep the $25,000 as profit or commission. Langford bought the property as agreed, but disagreement arose over the time frame in which Lang-ford had agreed to hold the land open to resale to Dew at their agreed upon price. Ultimately, Dew brought an action claiming a constructive trust had arisen and sought to enforce the orally agreed upon resale price. The trial court found that Dew failed to prove that Langford agreed to hold open the sale for more than ninety days. Id. at 740-42. Our supreme court held no constructive trust arose because Langford had not done anything “wrong” that caused him to be “unjustly enriched,” and had performed all that was legally required of him: he held the land ready to tender upon receiving the purchase price. Id. at 744. In this case, Thomas has at all times stood ready to perform its duty under the contract and judgment. As such, no constructive trust could arise.
¶ 19. Similarly, this Court has held that a resulting trust may be found when parties make an unwritten agreement for the transfer of property, and one party holds title with the understanding that he will transfer the title to the other party, but then he subsequently refuses to complete the transfer and “inequity arises out of the trustee’s subsequent unwillingness to hon- or the terms of the parties’ original agreement.” Simmons v. Simmons, 724 So.2d 1054, 1057 (¶ 7) (Miss.Ct.App.1998). However, in the present case, any inequity that arose did not arise from Thomas being unwilling to perform under the parties agreement or the judgment. Rather, any inequity arose from Trilogy’s own actions. As such, a resulting trust cannot be found under these facts. There is no merit to this assignment of error.
III. ATTORNEYS FEES
¶ 20. The original contract provided that Trilogy should pay attorneys’ fees in “collecting amounts due from customer [Trilogy] or in enforcing any rights of Thomas hereunder.” Contractual provisions between knowledgeable parties allocating the burden of attorneys’ fees are enforceable. See Turner v. Terry, Nos. 1999-CA-00753-SCT, 1999-CA-01395-SCT, slip op. at 11 (¶¶ 25-27), — So.2d —, —, 2001 WL 171318 (Miss. Feb. 22, 2001). The Circuit Court of Lowndes County awarded Thomas $42,494.52 in at *888 torneys’ fees which it incurred in defending against both the action brought in the Rankin County Circuit Court and motion brought in the Lowndes County Circuit Court. Further, Trilogy has been assessed attorneys’ fees in all proceedings prior to this Court’s second opinion. Trilogy’s argument is that the present proceedings are not brought pursuant to the original contract.
¶ 21. This assertion is without merit because Thomas has incurred fees enforcing its rights under the contract. Trilogy’s action in the Rankin County Circuit Court and its subsequent motion before the Lowndes County Circuit Court were attempts to relitigate the issue of whether it should benefit from the post-judgment third party leases, and Thomas is entitled to attorneys’ fees arising out of this litigation.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING AND MYERS, JJ., CONCUR.
MCMILLIN, C.J., AND SOUTHWICK, P.J., NOT PARTICIPATING.