IRVING, J.,
dissenting:
¶ 24. I cannot agree that, under the unique facts of this case, summary judgment was appropriate. Therefore, I dissent. I would remand this case to the trial court for further proceedings pursuant to subsections (e) and (f) of Rule 56 of the Mississippi Rules of Civil Procedure.3
*437¶ 25. Daron and Peggy Maxwell filed a medical negligence action against Baptist Memorial Hospital-DeSoto, Inc., alleging that Baptist’s negligence caused the death of their father, Walter Maxwell. More specifically, in their complaint, the Max-wells allege that:
On May 11, 2002, Walter Maxwell was admitted to Baptist Memorial Hospital-DeSoto and diagnosed as suffering from retention. While at Baptist Memorial Hospital-DeSoto, Mr. Maxwell developed a stage IV bedsore.
In July 2002, Mr. Maxwell was discharged from Baptist Memorial Hospital-DeSoto. Prior to Mr. Maxwell’s discharge, a wound care nurse told Mr. Maxwell that his bedsore should have been debrided or scraped, but because he was being discharged, it was okay. Approximately one week after Walter Maxwell’s discharge from Baptist Memorial Hospital-DeSoto, Mr. Maxwell was admitted to Delta Medical Center for debridement and scraping of the bedsore. Mr. Maxwell later died on August 31, 2002, as a result of the sepsis from the underlying bedsore.
¶ 26. The complaint further alleges that Baptist was negligent and grossly negligent in the following respects because it:
a. Failed to develop and implement appropriate mechanisms to monitor and oversee the treatment provided by the staff, employees and/or agents practicing in the hospital;
b. Failed to continuously monitor the performances of the staff, employees and/or agents practicing in the hospital to ensure their competency to exercise the responsibilities they had been granted;
c. Failed to restrict, suspend or require supervision when medical personnel demonstrated an inability to perform certain types of procedures;
d. Failed to intervene affirmatively and actively to prevent medical personnel from endangering a hospitalized patient;
e. Failed to prevent medical personnel from providing services to hospital patients when those in charge knew or should have known through reasonable inquiry that the medical personnel were not competent;
f. Failed to enact and have in place standard operating policies and procedures to ensure adequate and proper patient care by its staff and nursing personnel or, in the alternative, failed to ensure that such staff and nursing personnel followed any such standard operating policies and procedures in the care, treatment, monitoring and observation of patients which were in effect during the time complained of herein;
g. Failed to provide in-house training to its staff and nursing personnel to ensure proper and adequate patient care during the time complained of herein;
h. Failed to provide adequate number of nursing personnel to ensure proper and adequate patient care during the time complained of herein;
*438i. Failed to ensure that staff and nursing personnel performed their respective duties in a fashion required to ensure proper and adequate care of patients during the time complained of herein;
j. Failed to require staff and nursing personnel on duty to be available in proximity of patients to ensure patients, needs and safety are promptly attended to timely during the time complained of herein;
k. Failed to ensure that staff and nursing personnel promptly and correctly comply with instructions rendered by patients’ physicians relating to the care and treatment of such patients while in the said facility during the time complained of herein; and,
l. Failed to provide the quality and standard of care required by law.
¶ 27. Finally, the complaint alleges that Baptist “breached the aforesaid duties, [that] such breaches proximately caused or contributed to Walter Maxwell’s injuries and related damages,” and that Baptist was liable under the doctrines of responde-at superior or agency for the negligence and gross negligence of its “servants, agents, contractors and employees.”
1128. Baptist filed a general denial and followed up with discovery requests in which it sought, inter alia, the identity and the subject matter of the testimony of any experts that the Maxwells planned to call at trial. The Maxwells responded approximately six weeks prior to Baptist filing its motion for summary judgment. In then-response to Baptist’s discovery request, the Maxwells identified three experts: Albert Britton, III, M.D.; Luanne Trahant, R.N., S.S.N., L.N.C.; and Andrew Weinberg, M.D., F.A.C.P. For each of the experts, the Maxwells’ response gave the expert’s schooling and training, and advised that the expert would testify that Baptist “deviated from the standard of care in [its] management of Walter Maxwell, and that these deviations caused or contributed to Walter Maxwell’s poor condition and subsequent death.” The response further identified the documents, inclusive of the decedent’s medical records, reviewed by the expert and provided that the testimony would be based upon that review and upon the expert’s “training, education and experience” in his respective field. Finally, the response provided that the expert’s opinion was “to a reasonable degree of medical certainty and will be seasonably supplemented as more information is learned in discovery.”
¶ 29. After receiving the Maxwells’ response, Baptist did not seek to compel any further discovery. Instead, apparently concluding that the response was insufficient to create a genuine issue of material fact regarding Baptist’s negligence and its role in causing or contributing to Walter Maxwell’s death, Baptist moved for summary judgment. No affidavits were attached to the motion or submitted in support thereof. The motion averred that “[t]he opinions provided by [the Maxwells] are insufficient to establish a prima facie case of medical negligence against [Baptist] nurses, in that they fail to set forth the standard of care or identify the manner in which the nurses allegedly breached the standard of care.”
¶ 30. The Maxwells responded to the motion for summary judgment, but not until the day of the hearing. In their response, the Maxwells submitted three affidavits, one from Luanne Trahant, one from Leslie Tar, M.D., M.P.H., and one from their attorney, the Honorable Pieter Teeuwissen. The Maxwells also stated that they were willing to make their experts available for deposition at a mutually *439convenient time so that Baptist could “further inquire about their opinions.”
¶ 31. Dr. Tar stated in his affidavit:
I have reviewed the material medical facts relevant [to] Mr. Walter Maxwell’s medical care while hospitalized at Baptist Hospital between 05/11/02 and 07/19/02. I have also reviewed the material medical facts relevant to the care he received upon discharge from Baptist Hospital to Graceland Nursing Home. Based on this review, I believe that the development of the patient’s decubal [sic] ulcer, and the complications arising from the same, represent a breach from the standard of acceptable medical care. This opinion is expressed within a reasonable degree of medical certainty.
¶ 32. In her affidavit, Mrs. Trahant stated, among other things, the following:
In the fall of 2004, I was contacted by Pieter Teeuwissen to review the records of Walter Maxwell, deceased, to formulate an opinion regarding Mr. Walters’ medical treatment from Baptist Memorial Hospital.
* * ‡ * *
According to the records from Baptist Hospital, Mr. Maxwell was exposed to repeated pressure from not being turned or provided with a low air loss mattress for pressure reduction. The treatments provided to the coccyx were inappropriate for a Stage IV wound and often the records were void of entries indicating that a treatment was done to the wound. There was a significant delay in the evaluation and treatment by an entersto-mal [sic] therapist and it should be noted that within 6 days after she was consulted and the proper treatment and interventions were implemented, the wound began to show signs of healing and improving. The staffs failure to provide these important assessments and interventions directly resulted in the development and deterioration of Mr. Maxwell [sic] wound. These failures were clearly a breach in the standard of care for nursing as well as violations of the Mississippi Nurse Practice Act, the Mississippi Minimum Standards for Hospitals as well as the Joint Commission on Accreditation for Hospitals.
¶ 33. Mr. Teeuwissen stated the following in his affidavit:
Since March 11, 2005, I have attempted to secure affidavits in support of Plaintiffs’ Response to the Motion for Summary Judgment filed by Baptist Memorial Hospital-DeSoto.
Since that time, I learned that one of Plaintiffs’ experts, Andrew Weinberg, M.D.[,] has been recalled to active military duty in his capacity as a Naval medical officer attached to a Marine Reserve Unit located in Virginia.
While attempting to secure the necessary affidavits to prove a prima facie case, the undersigned has maintained a busy calendar consisting of the following:
• Grading the February bar exams, chancery section, as a member of the Mississippi Board of Bar Examiners which were due March 23, 2005;
• Attending the National Conference of Bar Examiners in Seattle, Washington April 7-10, 2005;
• Preparing for trial (defense counsel) in Zid Thompson v. The City of Jackson, United States District Court for the Southern District of Mississippi, set for April 28, 2005;
• Preparing for testimony as a chancery practice expert for the defendants in the matter of Juliet Lawson Jowett v. Richard F. Scruggs, et al., Jackson County Circuit Court Cause No. CI-99-0402(1);
*440• Researching and presenting two CLE Seminars on April 15, 2005 and May 4, 2005, respectively, as well as attending the quarterly Mississippi Board of Bar Admissions Meeting on April 21, 2005;
• Preparing for and participating in four-day binding arbitration in Amanda May v. Dillards, United States District Court for the Southern District of Mississipjoi, May 16, 2005;
• Preparing for [and] serving as lead counsel (defense) in the matter of Thomas Johnson v. The City of Jackson, Hinds County Circuit Court Cause Number 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, beginning Monday, May 23, 2005; and,
• Preparing for trial in Theopal Smith v. King’s Daughters Hospital, et al, Washington County Circuit Court Cause Number, Cl 2002-2380, which begins Monday, June 6, 2005[,] as a first setting set in January 2004.
All of these matters came after having traveled every week during January in preparation for trial in Barbara Reed v. Beverly Healthcare, et al., Hinds County Circuit Court Cause Number 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 CIV, a trial which lasted from February 7 through February 18, 2005. In addition, counsel prepared for and participated in oral argument before the Mississippi Supreme Court on March 7 and 8, 2005[,] in separate matters.
¶ 34. The majority finds that the trial court did not err in striking the Maxwells’ affidavits. It should be pointed out that the record before us does not contain the bench ruling of the trial court. The record reflects that during the hearing on the motion for summary judgment, the trial judge stated that if he were to strike the affidavits, such action would dictate that the motion be granted. However, at the end of the hearing, the trial judge took the motion under advisement. The judge granted the motion twenty-eight days later when he issued an order finding that the motion for summary judgment was well-taken and incorporating his oral ruling given from the bench on June 30, 2005. The bench ruling, referenced in the judge’s order, was not made a part of the record on appeal, which was docketed with the clerk of this Court on January 4, 2006. The record further reflects that on May 5, 2006, Baptist filed a motion to supplement the record with the judge’s June 30 bench ruling. However, this motion was dismissed by the clerk on May 8, 2006, “for failure to attach certified copies pursuant to MRAP 10(e).” The record does not reflect any further action by Baptist to provide a certified copy of the ruling, and I can find no certified copy of the ruling in the record. There is an uncertified copy, which apparently is the document relied upon by the majority in its finding that the trial court struck the affidavits.
¶ 35. It is well-settled law that “Mississippi appellate courts may not consider information that is outside the record.” Peden v. City of Gautier, 870 So.2d 1185, 1188(¶ 8) (Miss.2004) (citing Dew v. Langford, 666 So.2d 739, 746 (Miss.1995)). Consequently, we cannot consider the trial court’s reasoning in support of its order. Nevertheless, assuming arguendo that the bench ruling is before us such that we can consider it, I would acknowledge that it was well within the court’s discretion to strike the affidavits. However, had I been the trial judge, I would not have done so. On the unique facts here, it might have been more appropriate to view the affidavits as a fleshing out or supplementation of the Maxwells’ response to Baptist’s interrogatory regarding the Maxwells’ experts. After all, two of the affidavits were from individuals who had been identified in the Maxwells’ response to Baptist’s interrogatory seeking the identity of the Maxwells’ experts. Despite my failure to find re*441versible error with the trial court’s striking the affidavits, I still believe summary judgment was improperly granted. I now turn to a discussion of my reasons for believing so, even if there was no error in striking the affidavits of the Maxwells’ experts.
¶ 36. In my view, the response submitted by the Maxwells to Baptist’s expert interrogatory was sufficient to preclude summary judgment. The majority acknowledges that the response contains opinions of experts who would “testify to a reasonable degree of certainty that Baptist ‘deviated from the standard of care in [its] management of Walter Maxwell, and that these deviations caused or contributed to Walter Maxwell’s poor condition and subsequent death.’ ” However, the majority, citing Hubbard v. Wansley, 954 So.2d 951, 956-57(¶ 12) (Miss.2007), finds that the response “[does] not sufficiently establish each of the elements of a prima facie case of medical malpractice” and are therefore insufficient to prevent summary judgment. With all due respect to the majority, the quoted authority does not address the limited and specific issue that is before us: whether interrogatory answers that do not technically comply with the requirements of our discovery rules are sufficient to preclude the grant of summary judgment where the proponent of summary judgment did not object to the sufficiency of a response when it was made.
¶ 37. I readily admit that our rules of procedure require sworn responses to interrogatories. However, I am not prepared to sanction the grant of summary judgment against a party, based on an unsworn response, where the proponent of summaiy judgment, at the time of the response, did not question either the completeness or the form of the response with respect to its compliance with the rules.4 Further, I agree that the affidavits submitted by the Maxwells were untimely and not as complete as they should have been, but given (1) the pleadings in this case, (2) the Maxwells’ unchallenged responses to Baptist’s interrogatories, and (3) the lack of a medical affidavit by Baptist contradicting the allegations contained both in the Maxwells’ complaint and in their answers to interrogatories, it is my view that the trial judge erred in granting summary judgment. It seems to me that on these unique facts, summary judgment was improvidently granted, and further proceedings pursuant to Rule 56(e) and (f) of the Mississippi Rules of Civil Procedure were, and are, warranted. I do not believe that Baptist could simply rely on its motion. After all, the proponent of a motion for summary judgment must prove that he is entitled to summary judgment, even if the opponent of the motion makes no response. Foster v. Noel, 715 So.2d 174, 180(1136) (Miss.1998); Brown v. Credit Ctr., Inc., 444 So.2d 358, 364 (Miss.1983).
¶ 38. I would reverse and remand for a full trial on the merits after allowing Baptist adequate time to depose the Maxwells’ experts if it desires to do so.
KING, C.J., LEE, P.J., AND BARNES, J, JOIN THIS OPINION.

. Subsection (e) provides in part:
The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in *437this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
Subsection (f) provides:
Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

. I note that Baptist's motion for summary judgment challenged the sufficiency of the response provided by the Maxwells to Baptist’s expert witness interrogatory. However, it did not challenge the sufficiency of the response on the bases that it was unsworn and not in compliance with the rules.