LOWENBURG *v.* KLEIN *et al.*

[87 South. 653.  No. 21683.]

1. CONTRACTS. *Courts will not grant relief on illegal contract when parties in pari delicto.*

When an action is based upon a contract which is in violation of the laws of the state, and the parties to the action are *in pari delicto*, ourt courts will not entertain a suit for the relief of either against the other, but will leave them in their respective conditions.

2.  INJUNCTION.  *Attorney's fees not allowable on dissolution of injunction to enforce illegal agreement.*

Since the courts will not grant relief to either party to an illegal contract, when a suit for injunction is based upon an illegal agreement, and the parties thereto are *in pari delicto,* attorney's fees should not be allowed to the defendant upon the dissolution of the injunction.

APPEAL from chancery court of Warren county.

HON. E. N. THOMAS, Chancellor.

Suit by Joseph Lowenburg against Joseph Klein and others for an injunction. From a decree dissolving a preliminary injunction and dismissing the bill, plaintiff appeals. Affirmed in part, and reversed in part.

*Anderson, Vollor & Kelly,* for appellant.

While this action is in form asking for affirmative relief, it is in nature strictly a defensive one.

Mr. Pomeroy, in the 2nd Volume of the Fourth Edition of his great work on Equity Jurisdiction, in discussing this whole question, applicable not only to the proposition in hand, but to several of the others, uses this language, under the head of *In pari delicto*—generad rules.—"The proposition is universal that no action arises, in equity or at law, from an illegal contract; no suit can be maintained for its specific performance, or to recover the property agreed to be sold or delivered, or the money agreed to be paid, or damages for its violation. The rule has sometimes been laid down as though it were equally universal, that where the parties are *in pari delicto,* no affirmative relief of any kind will be given to one against the other. This doctrine, though true in the main, is subject to limitations and exceptions which it is the special object of the present inquiry to determine. As applications of this principle, the following rules may be regarded as settled, where the parties are *in pari delicto.* If the contract had been voluntarily executed and performed, a court of equity will not, in the absence of controlling motives of public policy

to the contrary, grant its aid by decreeing a recovery back of the money paid or property delivered, or a cancellation of the conveyance or transfer. As long as the contract is executory, it cannot be enforced in any kind of action brought directly upon it; the illegality constituting an absolute defense. As an application of the same doctrine merely in a different form, while the agreement is executory, courts of equity my relieve the debtor or promising party by ordering the written instrument and other securities to be surrendered and cancelled, and by granting the ancillary remedies of injunction, discovery, and the like. Whenever the circumstances are such that the defensive remedy at law would not be equally certain, perfect, and adequate, this jurisdiction will be exercised. The equitable relief so conferred does not violate the general maxim concerning parties *in pari delicto;* on the contrary, it carries that maxim into effect. It has already been shown that the maxim, rightly interpreted, does not require the condition of the parties, with respect to the substituting executory contract, to remain unchanged and undisturbed. The remedy of cancellation or injunction, under the circumstances, is simply the equitable proceeding identical with the setting up the illegality as a defense to defeat a recovery at law, and thus get rid of the contract as a binding executory obligation. The parties are left undisturbed as to their property rights." Section 940, pages 1992 to 1997.

2. The contract involved in this proceeding, while against public policy and illegal, is executory and not executed, and, as already seen in the quotation from Mr. Pomeroy, *supra,* the rule is very different in the two cases. The rule as to executory contracts, where the parties stand *in pari delicto* is, that while they cannot be enforced either by specific performance or by an action for damages on account of the breach, either party may stop the consummation of the contract on his part by an action to rescind and recover back what may have been paid by him in consummation of the transaction. Especially is this true when

the proceeding, as the one at bar, is to stop the payment of the money, or the cancellation of a check given in pursuance of the illegal transaction.    2 Pomeroy (4 Ed.), secs. 940 & 941; *Spring Company* v. *Knowlton,* 103 U. S. ——, 26 L. Ed. 347; 3 Comyn on Contracts, 361; 2 Parsons on Contracts, page 746; *Block* v. *Darling,* 140 U. S. ——, 35 L. Ed. 476; *Bernhard* v. *Taylor* (Ore.) 31 Pac. 968.    Citing many authorities in suppore of the doctrine. See, also, *Hazard* v. *Coyle* (R. I.), 48 Atl. 442, 443 & 444; *Day* v. *Lown,* 51 Iowa, 364, 1 N. W. 786; *Cleveland, etc., Ry. Co.* v. *Hirsch* (C. C. A.), 204 Fed. 848-858; 2 Words & Phrases (2 Series), pp. 990, 991; *McCutcheon* v. *Capsule Co.,* 145 U. S. 470, 36 L. Ed. 748.

The rule is thus announced in 23 Cyc., page 343, paragraph D : "Although an executory contract for the illegal sale of liquor may be rescinded and partial payments reclaimed, yet if the contract had been fully executed, no action will lie, at common law, to recover back the price or value of the liquor."    This is practically a "goose" case, and covers the facts in this case like a blanket.

3.    The real and controlling object of the section was to prevent the bank's paying the illegal check given by complainant to Klein.    As observed under the head of this proposition, *supra,* there was never any illegal relation existing between Lowenburg and the bank.    The bank had his money on deposit and he had a perfect right to demand that money or stop the payment of this illegal check, drawn on his funds in the bank of Klein.    *Bernhard* v. *Taylor, supra,* is ample authority to support this proposition.    11 Rose's Notes (Revised Edition), pp. 214, 215, & 216, 3 L. R. A., 679, sec. 208; *Drinkall* v. *Movius State Bank,* (N. D.) 57 L. R. A. 341 and Notes.

4.    Under the facts the maxim of *in pari delicto* did not obtain.    Only an attempt had been made on the part of complainant to violate the law; but it is fair to say that had Klein complied with his agreement and delivered the whisky to complainant, the law would have been violated, but in all probability the courts would never have known

anything about the transaction. However, this was not done. Klein refused to deliver the liquor and attempted, and still is attempting, at the same time, to hold the check and collect the one thousand five hundred dollars without giving a penny worth of anything for it. The most unconscionable proposition, we submit, that could be brought before a court of justice; however as stated, the relation of *particeps criminis* between the two parties was never consummated, and the maxim of *in pari delicto* therefore, cannot apply, because the facts show that the complainant never occupied that relation in any particular. to Klein. His effort now is to stop the payment of his check to Klein, or his assigns, and get his money back out of the bank where it was legally deposited.

5. The decision of the court while attempting to apply the rule of leaving the parties where they had put themselves, and refusing to grant relief to either, in this decree entirely abrogates the rule, for it in fact gave Klein all the relief he could possibly expect or hope for. It not only allowed him to hold the check and thereby give him the authority to present and collect it, but it also gave him damages in the sum of one hundred fifty dollars for the wrongful suing out of the injunction. Even if the rule applies which the court attempted to enforce, all it could have done under the law would be to deny the recovery and dismiss the case, and thereby leave the parties exactly where they were before the suit was brought If Klein had any advantage by virtue of the transaction, under that view of the case he could retain it, but he had no right to anything more than that. The effect of the decree, we submit, is not only to aid Klein in stealing and collecting the check for one thousand five hundred dollars but is also to award him a premium of one hundred fifty dollars to aid and assist him in that purpose and design. Such a proceeding and its outcome cannot and will not be sanctioned by a court of conscience.

6. This proposition is simply a corollary of the 5th. That is, the court had no right to grant Klein an affirma-

tive decree by awarding him damages to the amount of one hundred fifty dollars or any other sum, for the wrongful suing out of the injunction, and thereby giving him the right of execution to collect the same. This, we submit, in any view of the case, was reversible error.

The case relied on by counsel in the court below was that of *Woodson* v. *Hopkins,* 85 Miss. 171. The court is doubtless well acquainted with this case, as it was one of some notoriety at the time it was decided. Judge WHITFIELD, of the supreme bench arose to the heights of his great and brilliant intellect and legal attainment when he delivered this opinion. The real decision in the case, however, is summed up in the syllabus, although the opinion is very lengthy. The syllabus is as follows:

"Equity. Jurisdiction. Fraudulent conduct. Illegal contracts. A lender of money at extortionate rates of interest under contracts which are void as against public policy, who establishes an agency for the carrying on of his nefarious business cannot maintain a suit in equity against one who was placed by him in charge of such business for an accounting where he must call in the aid, directly or indirectly, of the illegal contracts to make out his case. *Gilliam* v. *Brown,* 43 Miss. 641. Overruled."

We, therefore, ask the court to reverse the decision and grant a decree here perpetuating the injunction, cancelling the check, and giving appellant the right to go to the bank and get his money if he so desires.

*Brunini & Hirsch,* for appellee.

By sub-division four of appellant's brief, on page 13, appellant advances this proposition: "Under the facts the maxim of *in pari delicto* did not obtain. Only an attempt had been made on the part of complainant to violate the law  .  .  .   However, as stated, the relation of *particeps criminis* between the two parties was never consummated, and the maxim of *in pari delicto,* therefore, cannot apply, because the facts show that the complainant never occu-

pied that relation in any particular to Klein. His efforts now· is to stop the payment of his check to Klein, or his assigns, and get his money back out of the bank where it was legally deposited.

We submit that appellant, by advancing the foregoing statement and argument, has entirely misapprehended the facts in the case, as well as the law applicable thereto. Lowenburg, according to the record in this case, bought and paid for the whisky. The crime was not only attempted, but it was consummated.

Was the "relation of *particeps criminis* between the two parties" consummated? Section 2103 of Hemingway's Code provides that if any person shall act as agent or assistant of either the seller or purchaser, in effecting the sale of any liquors, etc., he shall be guilty of misdemeanor, etc.

In one aspect of the facts in this case there was a violation of this section by appellant and appellee.

Section 2104, of the same code denounces a penalty against anyone who shall solicit orders for the sale of, or shall sell any liquors, the sale of which is unlawful under the provisions of the act, whether the liquor is to be de-. livered within or without the state, contemplating or permitting that the liquors shall be transported into the state. In one aspect of the facts in this case, this section was violated by the appellant ʼand the appellee.

Section 2147 of the same Code makes it unlawful for any person, firm or corporation in this state, in person by letter, circular or otherwise, to solicit or take orders in the state for any of the liquors mentioned in section one of the act, and that the inhibition shall apply, whether the parties intend that the same shall be shipped in this state from outside of the state, or from one point in this state to another point in this state, and this is true whether the order be in writing or in parole, and whether the order is subject to the approval of some other person, and no part of the price is paid nor any part of the goods delivered when the order is taken.

So appellee, on his part, submits that the act was consummated; that the parties bore the relationship of *"particeps criminis,"* that is, the appellant and appellee, and that the maxim of *in pari delicto* applies in full force and vigor, and the parties under the law and all the authorities, are left just where they were at the time of the commission of the act. The crime was complete and consummated, and no helping hand will be extended to appellant, under the law. The law will not aid him in getting his check back, any more that it would enable him in getting his money back.

With the consummation of the crime, and the payment of the actual money appellant cannot gainsay he would be without relief, but is he not in precisely the same position when he participates in the complete commission of the crime and the check is certified by the bank, in accordance with the understanding of appellant and appellee.

The certifying of a check is the equivalent of payment, the bank charging the account of the depositor with the amount of the check, and the check thereupon becoming an obligation of the bank.

"A certified check is a check drawn on a bank by a depositor, which is recognized and accepted by the proper officer of the bank as an appropriation of the amount specified therein to the payee named." *Security Bank* v. *National Bank of the Republic,* 67 N. Y. 458, 462, 23 Am. Rep. 129; *Clews* v. *Bank of New York Nat. Banking Ass'n,* 89 N. Y. 418, 421, 42 Am. Rep. 303; *Bank of British North America* v. *Merchant's Nat. Bank,* 91 N. Y. 106, 111.

The certifying of a check is equivalent to an acceptance of a bill of exchange payable on demand, whereby the sum so specified is immediately transferred from the drawer's account, thereby making the bank primarily liable to a *bona-fide* holder of the check for value. *State* v. *Miller,* 85 Pac. 81, 82, 47 Or. 562, 6 L. R. A. (N. S.) 365; *Chadwick* v. *United States,* 141 Fed. 225, 229, 72 C. C. A. 343; *United States* v. *Heinze,* 161 Fed. 425, 427; *Merchants*

*Bank* v. *State Nat. Bank,* 77 U. S. (10 Wall.) 604, 645, 19 L. Ed. 1008.

The principles laid down in the leading Mississippi case, *Woodson* v. *Hopkins,* 85 Miss. 171, are exhaustive, illuminating, and a complete answer to the contentions of appellant.

The same doctrine is admirably stated in 9 Cyc. of Law, 546. No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the ground-work of his claim. The rule is expressed in the maxim *ex dolo malo non oritur actio?* and in *in pari delicto potior est conditio defendentis.* The law, in short, will not aid either party to an illegal agreement; it leaves the parties where it finds them. Therefore neither a court of law nor a court of equity will aid the one in enforcing it, to give damages for a breach of it, or set it aside at the suit of the other, or when the agreement has been executed, in whole or in part, by the payment of money or the transfer of other property, lend its aid to recover it back. The test in all such cases is correctly stated in 15 Am. & Eng. Ency. of Law, 934.

The true doctrine was correctly put long ago in *Wooten* v. *Miller,* 7 Smed. & M. 386, and again in *Deans* v. *McLendon,* 30 Miss. 343, 9 Cyc. of Law, 563. To deprive a party of the right to repudiate an illegal contract and recover money paid thereon, it is not necessary that the illegal object should have been fully executed; it is sufficient if there has been a partial execution of such illegal object. 15 Am. & Eng. Ency. of Law, 1007. Section 610 of the Mississippi Code of 1906; *Baggett* v. *Beard,* 43 Miss. 120; *Freeman* v. *Lee County,* 66 Miss. 1; *Jamison* v. *Dulaney,* 74 Miss. 890; *Hinton* v. *Perry County,* 84 Miss. 536; *Vicksburg Waterworks Co.* v. *Vicksburg,* 99 Miss. 132; *New Orleans Railroad* v. *Martin,* 105 Miss. 230.

In conclusion we respectfully submit that under the facts, as revealed by this record, and the law applicable

thereto, appellant must be left where he found himself at the time of the suing out of the injunction herein, and that therefore the decree of the lower court should be affirmed.

W. H. COOK, J., delivered the opinion of the court.

Joseph Lowenburg exhibited his bill of complaint in the chancery court of Warren county against Joseph Klein and the People's Savings Bank & Loan Company, seeking to enjoin the presentation and payment of a certain check for the sum of one thousand five hundred dollars, and praying for the cancellation of the check. A preliminary injunction was issued, and upon the final hearing there was a decree dissolving the injunction and dismissing the bill and awarding the defendant Klein one hundred fifty dollars as attorney's fees, and from this decree the complainant prosecuted this appeal.

The bill of complaint filed by appellant charged that on the 16th day of December, 1919, he drew a check on the People's Savings Bank & Loan Company for the sum of one thousand five hundred dollars payable to himself, and that he indorsed the check in blank and delivered it to appellee Klein; that Klein presented the check to the bank and had the same certified; that the check was without legal consideration, and that he had received nothing of value therefor; that appellee Klein had refused to surrender the check or to give him any consideration for the same; and that unless restrained the check would be presented for payment and paid by the defendant bank. The bank filed no answer, but the defendant Klein answered the bill, denying the allegation thereof, and praying for the dissolution of the injunction and for statutory damages and solicitor's fees.

Upon the hearing of the cause, the complainant, Lowenburg, was the only witness introduced, and from his testimony it appears that about the time the near approach of national prohibition was disturbing the minds of so many

people the appellant became greatly agitated about his supply of liquors. One Gilbert, who operated a saloon at Delta, La., across the river from Vicksburg, maintained headquarters at the grocery store of defendant Klein, and appellant went to Klein's store to interview Gilbert, and he was informed that "Gilbert was over the river," and he thereupon opened negotiations with Klein for the purchase of a supply of liquors. Klein made him a price of one hundred dollars per case, but this price was not satisfactory and the deal was not closed. The following week negotiations were resumed, but Klein had then advanced the price to one hundred twenty dollars per case, and appellant still refused to pay the price. On the following Monday the supreme court of the United States sustained the validity of the National Prohibition Act (41 Stat. 305), and thereupon Klein advanced the price to one hundred fifty dollars per case. Appellant evidently concluded that further delay was dangerous, and thereupon he closed the trade for ten cases of whisky at one hundred fifty dollars per case, and gave Klein his check for one thousand five hundred dollars in payment therefor, and Klein promised that he would have the liquor delivered at appellant's residence the following night. It was agreed that the delivery would be made by a certain "fisherman" named Bennett, who operated along the river front, and who used in his business the significant cry, "Catfish for sale." Bennett was well known to appellant, and he appears to have been entirely satisfied with the arrangements. Night came on and the whisky was not delivered at appellant's residence and the long drouth still prevails in appellant's home. Upon receipt of the check Klein at once went to the bank and had the check certified, and has failed and refused to deliver the liquor or surrender the check; hence this suit.

The action of the learned chancellor in dissolving the injunction and dismissing the bill was correct. The transaction in which these parties were engaged was in violation of the positive statutory enactments and declared pub-

lic policy of both the national and state governments, and the courts will not lend their aid to either party. The possession of this liquor in the home of appellant would have been in violation of section 2, chapter 189, Acts of Mississippi legislature of 1918, and appellant had fully performed his part of this illegal agreement for the sale and delivery of the whisky, and, since the parties were *in pari delicto,* our courts will not entertain a suit for the relief of either against the other, but will leave them where they find them. 9 Cyc. 546; 15 Am. & Eng. Ency. Law, 997, 998, 999, 1001; *Wooten* v. *Miller,* 7 Smedes & M. 386; *Deans* v. *McLendon,* 30 Miss. 343; *McWilliams* v. *Phillips,* 51 Miss. 196; *Williams* v. *Simpson,* 70 Miss. 113, 11 So. 689; *Woodson* v. *Hopkins,* 85 Miss. 171, 37 So. 1000, 38 So. 298, 70 L. R. A. 645, 107 Am. St. Rep. 275.

In *McWilliams* v. *Phillips,* 51 Miss. 196, Judge SIMRALL, speaking for the court, said:

"All the parties participated in the violation of the law and are *in pari delicto.* In such cases the court will not, where the contract has been executed, interfere for the relief of either party; but will leave them in their respective conditions. Where a contract is executory, they will likewise refrain from lending aid to carry it into effect."

In the case of *Woodson* v. *Hopkins, supra,* in an able and exhaustive opinion, the authorities on this subject are collected and analyzed, and Chief Justice WHITFIELD, speaking for the court, there said:

"The true doctrine as to the inability of either party to a contract against public policy being permitted to invoke the aid of a court of law or equity is thus stated in the same authority (15 Am. & Eng. Ency. of Law, pp. 998, 999, 1001) : 'Where illegal contracts are executed by the parties, then the same principle of public policy which leads courts to refuse to act when called upon to enforce them will prevent the court from acting to relieve either party from the consequence of the illegal transactions. In such cases the defense of illegality prevails, not as a protection to the defendant, but as a disability in the plain-

tiff.' The court does not give effect to the contract, but merely refuses its aid to undo what the parties have already done.' 'The fact that the party seeking to enforce executory provisions of an illegal contract, though they consist only of promises to pay money, has performed the contract on his part, and that, unless the other party is compelled to perform, he will derive a benefit therefrom, will not induce the court to enforce such provisions. Nor can the party performing, on his part, the provisions of an illegal contract, recover on the ground of an implied promise on the part of the party receiving the benefits therefrom to pay therefor, as the law will imply no promise to pay for benefits received under an illegal contract by reason of the performance thereof by the other party.'

"The same doctrine is admirably stated in 9 Cyc. of Law, 546: 'No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the ground-work of his claim. The rule is expressed in the maxim, *"Ex dolo malo non oritur actio,"* and in *"In pari delicto potior est conditio defendentis."* The law, in short, will not aid either party to an illegal agreement; it leaves the parties where it finds them. Therefore neither a court of law nor a court of equity will aid the one in enforcing it, or give damages for a breach of it, or set it aside at the suit of the other, or, when the agreement has been executed, in whole or in part, by the payment of money or the transfer of other property, lend its aid to recover it back. The object of the rule refusing relief to either party to an illegal contract, where the contract is executed, is not to give validity to the transaction but to deprive the parties of all right to have either enforcement of, or relief from, the illegal agreement. While it may not always seem an honorable thing to do, yet a party to an illegal agreement is permitted to set up the illegality as a defense, even though it may be alleging his own turpitude. Money paid under an agree-

ment which is executed, whether as the consideration or in performance of the promise, cannot be recovered back where the parties are *in pari delicto.* And goods delivered or lands conveyed under an illegal agreement are subject to the same rule. Courts will not, even with the consent of the parties, enforce an illegal contract. And it would seem to follow that an illegal agreement cannot be rendered legal by ratification. An agreement void as against public policy cannot be rendered valid by invoking the doctrine of estoppel.' . . .

"The true doctrine was correctly put long ago in *Wooten* v. *Miller,* 7 Smed. & M. 386, the court saying: 'We have nothing to say in behalf of the morality of the transaction nor in favor of those who make the defense; but as they interpose the law as a shield, we cannot do less than say it covers and protects them.' And again in *Deans* v. *Mc-Lendon,* 30 Miss. 343, where the court said: 'Courts of justice, in the observance of these rules, are not influenced by any considerations of respect or tenderness for the party who insists upon the illegality of a contract, but exclusively by reasons of public policy. The object is to punish the active agent in the violation of a law by withholding from him the anticipated fruits of his illegal act, and thus, by deterring all persons from violating its mandates, to give sanctity to the law and security to the public.' And in *McWilliams* v. *Phillips,* 51 Miss. 196, where the court say: 'If both, however, concur in the illegal act and are in equal fault, the modern doctrine is that a court will not entertain the claim of either against the other to carry into effect the illegal contract.' And in *Williams* v. *Simpson,* 70 Miss. 115, 11 So. 689, we call special attention to the fact that in every one of these four Mississippi cases the contract was an executed one, the last one being the case of a merchant who merely failed to pay a sufficient privilege tax, and the one in 51 Miss. a case where a liquor dealer had simply failed to pay the required tax—cases where the acts were merely *mala prohibita.* . . .

"We declare the law in Mississippi now to be as it was stated to be in the four cases: *Hoover* v. *Pierce,* 26 Miss. 627; 30 Miss. 343; 51 Miss. 196; and 70 Miss. 113, 11 So. 689—viz.: That neither a court of law nor a court of equity, in this state, will entertain a suit for relief by either of two parties *in pari delicto* against the other, where the contract is against public policy. The plain truth is, on principle, that the contrary doctrine holds out a premium to those who violate the law, since, according to that doctrine, if they can only hurry fast enough to consummate their villainy, the law will help one to get from the other his part of the stolen plunder."

The doctrine of *locus poenitentiae* invoked by appellant cannot aid him under the facts of this case. Appellant has fully performed his part of the illegal contract, and has placed himself in a position where the courts will not relieve him. In 15 Am. & Eng. Ency. of Law, p. 1007, we find, in reference to this doctrine, the following statement:

"It seems, however, that the cases in which the principle that a party can avail himself of a *locus poenitentiae* to retrace his steps has been recognized to fall more properly under the principle that the courts will grant relief from illegal contracts where the party seeking relief was not *in pari delicto.*

"To deprive a party of the right to repudiate an illegal contract and recover money paid thereon, it is not necessary that the illegal object should have been fully executed; it is sufficient if there has been a partial execution of such illegal object."

In the application of the doctrine that the courts will not in any way lend their aid to either of the parties to an illegal agreement, we have reached the conclusion that the allowance of attorney's fees to the defendant was erroneous. It is the contention of appellee that the right to attorney's fees upon the dissolution of an injunction is statutory, and that this right is in no wise dependent upon the legality or illegality of the transaction upon which the

suit is based. This distinction is entirely too refined. It is true that the right to damages and attorney's fees upon the dissolution of an injunction is statutory, but when an illegal agreement underlies and is the basis of the entire litigation, and the parties are *in pari delicto,* the courts will not lend their aid to the enforcement of this right, and will not aid the defendant in securing the sinews of war to fight the legal battles which are thrust upon him on account of his participation in an illegal agreement, but will leave them in their respective positions.

The decree of the court below in so far as it awards appellees attorney's fees will therefore be reversed; otherwise the decree is affirmed.

*Affirmed in part, and reversed in part.*