# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02101-SCT

*ERNEST PRICE*

*v.*

*THE PURDUE PHARMA COMPANY; PURDUE PHARMA, L. P.; PURDUE PHARMA, INC.; PURDUE FREDERICK COMPANY; THE P. F. LABORATORIES, INC.; ABBOTT LABORATORIES AND ABBOTT LABORATORIES, INC.; GERRY ANN HOUSTON, M.D.; RONALD B. WILLIAMS, M.D.; ROGER COLLINS, M.D.; ECKERD CORPORATION; AND WALGREEN COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/22/2003 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LEONARD McCLELLAN |
| | HERBERT LEE, JR. |
| ATTORNEYS FOR APPELLEES: | CHRISTOPHER A. SHAPLEY |
| | ROBERT L. GIBBS |
| | LAWRENCE ELVIN ALLISON, JR. |
| | STEVE J. ALLEN |
| | JOSEPH ANTHONY SCLAFANI |
| | BRADLEY WITHERSPOON SMITH |
| | WALKER W. (BILL) JONES, III |
| | BARRY W. FORD |
| | TERENCE L. HIGH |
| | CABLE M. FROST |
| | ROBERT F. WALKER |
| | JOHN LEWIS HINKLE , IV |
| | CHRIS J. WALKER |
| | LEE DAVIS THAMES, JR |
| | R. E. PARKER, JR. |
| | WHITMAN B. JOHNSON, III |
| | JULIETTE VERONICA WILSON |

JOHN ALFRED WAITS
ROBERT S. ADDISON
C. PAIGE HERRING
JAMES P. STREETMAN, III
NATURE OF THE CASE: CIVIL - PERSONAL INJURY
DISPOSITION: AFFIRMED - 02/02/2006
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**CONSOLIDATED WITH**
**NO. 2004-CA-01929-SCT**

*ERNEST PRICE*

*v.*

*THE PURDUE PHARMA COMPANY; PURDUE PHARMA, L. P.; PURDUE PHARMA, INC.; PURDUE FREDERICK COMPANY; THE P. F. LABORATORIES, INC.; ABBOTT LABORATORIES AND ABBOTT LABORATORIES, INC.; GERRY ANN HOUSTON, M.D.; RONALD B. WILLIAMS, M.D.; ROGER COLLINS, M.D.; ECKERD CORPORATION; AND WALGREEN COMPANY*

DATE OF JUDGMENT: 09/29/2004
TRIAL JUDGE: W. SWAN YERGER
COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: LEONARD McCLELLAN
HERBERT LEE, JR.
ATTORNEYS FOR APPELLEES: CHRISTOPHER A. SHAPLEY
ROBERT L. GIBBS
LAWRENCE ELVIN ALLISON, JR.
STEVE J. ALLEN
JOSEPH ANTHONY SCLAFANI
BRADLEY WITHERSPOON SMITH
WALKER W. (BILL) JONES, III
BARRY W. FORD
TERENCE L. HIGH
CABLE M. FROST
ROBERT F. WALKER

JOHN LEWIS HINKLE, IV
CHRIS J. WALKER
LEE DAVIS THAMES, JR.
R. E. PARKER, JR.
WHITMAN B. JOHNSON, III
JULIETTE VERONICA WILSON
JOHN ALFRED WAITS
ROBERT S. ADDISON
C. PAIGE HERRING
JAMES P. STREETMAN

NATURE OF THE CASE:          CIVIL - PERSONAL INJURY
DISPOSITION:                 AFFIRMED - 02/02/2006
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    This case arises from a civil suit involving the pharmaceutical drug OxyContin and comes before this Court following the trial court's grant of various motions for summary judgment filed by several defendants. The plaintiff/appellant, Ernest Price, sued multiple defendants claiming he sustained injuries from ingesting OxyContin, including addiction to the drug.   The trial judge granted the summary judgment motions because the facts revealed  the plaintiff's claim arose from his own behavior which amounted to fraud and subterfuge, namely acquiring multiple prescriptions from multiple doctors during concurrent time periods.   Price now raises only one issue for this Court:   whether the trial court erred in granting the motions for summary judgment.

¶2.    We find no error and affirm the final judgments as entered by the Circuit Court of the First Judicial District of Hinds County.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶3.    Ernest Price filed this suit against The Purdue Pharma Company, Purdue Pharma, L. P., Purdue Pharma, Inc., Purdue Frederick Company, The P. F. Laboratories, Inc., Abbott Laboratories and Abbott Laboratories, Inc., Gerry Ann Houston, M.D., Ronald B. Williams, M. D., Roger Collins, M. D., Eckerd Corporation, and Walgreen Company, all of whom were allegedly involved in the production, manufacture, distribution, prescription, and/or sale of OxyContin.    OxyContin is a strong narcotic pain medicine classified as a Schedule II drug because it contains oxycodone.    Miss. Code Ann. § 41-29-115(A)(a)(1)(xiv) (1972).    Price makes several allegations including negligence, products liability, malicious conduct, fraud, and malpractice, claiming the drug was addictive, that its addictive nature caused him injury, and that the defendants took part in producing, prescribing, or distributing OxyContin to Price.

¶4.    Several of the defendants in this case are doctors who treated Price for his sickle cell anemia and related pain by prescribing OxyContin to him.    Price was simultaneously seeing several doctors, obtaining and filling several prescriptions, and using several pharmacies to acquire controlled substance pain medication.    The defendants moved for summary judgment asserting that Price's claim against them could not stand because it arose from his own wrongdoing.    The trial judge agreed.

¶5.    Price first saw Dr. Houston for treatment in 1997 and asked specifically to have OxyContin prescribed for him.    On March 13, 2001, Dr. Houston received a letter from Medicaid informing her that during the time between November 1999 and October 2000, Price had been treated by at least ten different physicians from ten different clinics in two cities and

had utilized seven pharmacies in three cities. After receiving this letter, Dr. Houston refused to prescribe Price any further narcotic medication.

¶6. Price first visited Dr. Collins in June of 2000 and specifically requested OxyContin. However, Price disputes requesting OxyContin in a certain dosage. Dr. Collins saw Price five times between June 14, 2000, and October 24, 2000, and Price never informed Dr. Collins that he was seeing other doctors and obtaining other prescriptions. During Price's last visit to him, Dr. Collins ended his treatment of Price's chronic pain and recommended that Price see a pain management specialist. In March of 2001, Roxanne Coulter, a nurse at the Mississippi Division of Medicaid, contacted Dr. Collins by letter, giving him the same information that Dr. Houston had received – that during the time between November 1999 and October 2000, Price had been treated by at least ten different physicians from ten different clinics in two cities and had utilized seven pharmacies in three cities. When contacted again by Price about an appointment in August of 2001, Dr. Collins informed Price he would not write him prescriptions for OxyContin. In September of 2002, Price again contacted Dr. Collins and requested OxyContin. When Dr. Collins refused, Price threatened legal action and filed this lawsuit the next day.

¶7. In September of 2000, only a few months after first seeing Dr. Collins, Price first saw Dr. Williams, who was referred by another doctor as a pain management specialist for Price. Dr. Williams was specifically asked by Price to prescribe OxyContin for him. Price visited Dr. Williams 19 times between September of 2000, and January of 2002, and Price never informed Dr. Williams that he was seeing other doctors or obtaining other prescriptions for

5

pain medicine. Medicaid contacted Dr. Williams in March of 2001, informing him that Price was using several doctors to obtain OxyContin prescriptions. Dr. Williams, at different times, had Price sign both a responsibility agreement for controlled substance prescriptions and a prescription medication form – in essence statements from Price that he understood the danger of dependency on drugs like OxyContin. In September of 2001, Dr. Williams contacted the Mississippi Medicaid Office and discovered that from February to March of that year Price had obtained more pain medicine prescriptions than those prescribed by Dr. Williams. In January of 2002, Dr. Williams informed Price that he would no longer write prescriptions for him.

¶8.    Dr. Collins filed a motion for summary judgment, basing his motion on the rule that Price's own wrongdoing prevented his claim from standing. When Price did not respond, the trial court ordered Price to file a response. Price's eventual response never addressed his obtaining multiple prescriptions from multiple doctors, but instead, Price claimed his doctors breached the applicable standard of care. The trial judge granted the motion and entered a final judgment of dismissal with prejudice against Price as to Dr. Collins only. The trial judge later granted similar motions filed separately by Drs. Houston and Williams and entered a final judgment of dismissal with prejudice against Price as to those two defendants. The Abbot defendants also later filed a similar motion, as did the Purdue defendants, and Walgreen, and Eckerd. The trial judge granted all of these motions in like manner and entered final judgments of dismissal with prejudice against Price as to these defendants. Additionally, because Price

6

failed to respond to those motions for summary judgment from the Purdue defendants, the Abbot defendants, Walgreen, and Eckerd, the trial judge took these motions as confessed.

¶9.     Price now appeals to this Court, claiming  the trial court erred in granting summary judgment.  Finding no error, we affirm the trial court's final judgments of dismissal.

## DISCUSSION

### I.     WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT

¶10.    The standard of review in considering on appeal a trial court's grant or denial of summary judgment is de novo.  *Satchfield v. R.R. Morrison & Son, Inc.*, 872 So.2d 661, 663 (Miss. 2004); *McMillan v. Rodriguez*, 823 So.2d 1173, 1176-77 (Miss. 2002); *Lewallen v. Slawson*, 822 So.2d 236, 237-38 (Miss. 2002); *Jenkins v. Ohio Cas. Ins. Co.*, 794 So.2d 228, 232 (Miss. 2001); *Aetna Cas. & Sur. Co. v. Berry*, 669 So.2d 56, 70 (Miss. 1996).  In considering this issue, we must examine all the evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits.  *Aetna*, 669 So. 2d at 70.  The evidence must be viewed in the light most favorable to the party against whom the motion has been made.  *Id.*  Issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and another party takes the opposite position.  *American Legion Ladnier Post No. 42 v. Ocean Springs*, 562 So.2d 103, 106 (Miss. 1990).  If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment

7

should be entered in that party's favor. *Monsanto Co. v. Hall*, 912 So.2d 134, 136 (Miss. 2005). The movant carries the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party is given the benefit of the doubt as to the existence of a material fact issue. *Id.* However, our decisions which discuss this rule are clear that when a motion for summary judgment is made and supported as provided in Miss. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of the pleadings, but instead the response must set forth specific facts showing that there is a genuine issue for trial. *Stuckey v. Provident Bank*, 912 So. 2d 859, 864 (Miss. 2005); *Miller v. Meeks*, 762 So.2d 302, 304 (Miss. 2000) (citing *Brown v. Credit Ctr., Inc*., 444 So. 2d 358, 362 (Miss. 1983)). *See also* URCCC 4.03(2). "If he does not so respond, summary judgment, if appropriate, shall be entered against him." Miss. R. Civ. P. 56(e). If any triable issues of fact exist, the trial court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. *Miller*, 762 So.2d at 304.

¶11. The trial court's decision to grant summary judgment rested on the principle of law that a plaintiff cannot recover in tort for injuries suffered if that plaintiff suffered those injuries while engaged, in or as a proximate result of, engaging in illegal conduct. *See Downing v. City of Jackson,* 199 Miss. 464, 477, 24 So.2d 661, 664 (1946). Because OxyContin is a Schedule II controlled substance and subject to criminal statutory restrictions which Price violated by procuring multiple prescriptions from different doctors concurrently, the trial judge refused to allow Price to prevail on his claims. Concerning the later motions for summary judgment

filed by the Purdue defendants, the Abbott defendants, and the pharmacy defendants, the trial judge took those motions as confessed because Price failed to respond to them. Additionally, several motions are open before this Court to dismiss the appeal as untimely. With regard to these motions, we now dismiss them as moot. Primarily before this Court, and raised by all defendants, is what is often called the wrongful conduct rule, which is wholly determinative of this issue.

¶12. It bears repeating that OxyContin is a strong pain medicine, a narcotic containing oxycodone and classified as a Schedule II drug. Miss. Code Ann. § 41-29-115(A)(a)(1)(xiv). Any attempt to acquire it fraudulently or dishonestly is a crime. "It is unlawful for any person knowingly or intentionally to acquire or obtain possession or attempt to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." Miss. Code Ann. § 41-29-144(1).

¶13. This Court has long recognized the maxim, from the words of Lord Mansfield, in *Holman v. Johnson*, 1 Cowper. 341, decided in 1775, "ex dolo malo non oritur actio," which means that "[n]o Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act." *Morrissey v. Bologna*, 240 Miss. 284, 300-01, 123 So.2d 537, 545 (1960). Nearly a century ago, this Court laid out the rule in Mississippi.

> If a plaintiff cannot open his case without showing that he has broken the law, a court will not aid him. It has been said that the objection may often sound very ill in the mouth of the defendant, but it is not for his sake the objection is allowed; it is founded on general principles of policy which he shall have the advantage of, contrary to the real justice between the parties. The principle of public policy is that no court will lend its aid to a party who grounds his action upon an immoral or illegal act.

9

> The principle has been applied in numerous cases wherein its application seems to have been of doubtful propriety, but the principle as stated is undoubtedly sound in logic, and necessarily affords the true test for the guidance of the courts.

*Western Union Telegraph Co. v. McLaurin*, 108 Miss. 273, 66 So. 739, 740 (1914). This rule in Mississippi applies to contracts cases as well, preventing relief on a claim based on a contract that is illegal or against our state's public policy. *Lowenburg v. Klein*, 125 Miss. 284, 87 So. 653, 655 (1921). This Court reemphasized the *Western Union* rule later in another case by holding that a plaintiff may be barred from any right of action when the incident giving rise to the claim was rooted in the plaintiff's violation of law. *Downing*, 199 Miss. at 477, 24 So. at 664.

¶14. At the same time, if the plaintiff is a lawbreaker at the time of his injury, that alone is not enough to bar the plaintiff from recovery. *Meador v. Hotel Grover*, 193 Miss. 392, 9 So.2d 782, 786 (1942). This principle is consistent with tort law concerning duties owed to known trespassers and preventing use of spring guns from guarding property. The injury must be a proximate result of committing the illegal act. *Id.* at 785. "The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of his case. Where the violation of law is merely a condition and a not a contributing cause of the injury, a recovery may be permitted." *Id.* The question is not merely when the wrongdoing was done, but what resulted from it. This Court has long held that if a plaintiff actually requires essential aid from his own illegal act to establish a claim, he has no case. *Capps v. Postal Telgraphcable Co.*, 197 Miss. 118, 19 So.2d 491, 492 (1944.)

¶15.   In the instant case, Price's entire claim is wholly rooted in his own transgressions taking place at the time his alleged injury occurred.   However, Price's wrongdoing coincides with his claim on a level beyond the mere question of when it took place.   Price absolutely requires the essential aid from his own misdeeds to establish his claim.   His violation of the law is not merely a condition, but instead an integral and essential part of his case and *the* contributing cause of his alleged injury.   Additionally, we cannot find that two versions of the matter at hand exist.   Price  never responded at trial, nor does he now, to the assertions that he was concurrently utilizing ten doctors and ten clinics in two cities and seven pharmacies in three cities to obtain OxyContin.   The finding that no genuine issue of material fact existed here was correct.   The trial judge committed no error in deciding to grant the motions for summary judgment.

¶16.   As to the trial judge's decision to take as confessed by Price the summary judgment motions to which he did not respond, this question, too, is quickly settled.   To restate what was required of Price before the trial court, an opponent to a motion for summary judgment "must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial." *McMichael v. Nu-Way Steel & Supply, Inc.*, 563 So.2d 1371, 1375 (Miss. 1990) (quoting *Newell v. Hinton*, 556 So.2d 1037, 1041 (Miss. 1990)).   Not only the movant, but also the opponent, carries a burden of rebuttal, one which arises after the moving party has satisfied the burden of proof that no genuine issue of material fact exists. *Hurst v. Southwest Mississippi Legal Services Corp.*, 610 So.2d 374, 383 (Miss. 1992).   The rule provides that the party adverse to the motion "must set forth specific facts showing that there is a genuine

11

issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Miss. R. Civ. P. 56(e). This does not necessarily mean that a party is entitled to summary judgment by default where the nonmoving party files no response. We have pointed out that "even in the absence of a response the court may enter judgment only 'if appropriate,' i.e., if no genuine issue of material fact exists." *Foster v. Noel*, 715 So.2d 174, 180 (Miss. 1998). In this regard, the trial judge also committed no error in determining that summary judgment was appropriate. Price failed to meet his burden because he never filed responses to the later motions for summary judgment and responded to the initial motions only upon being ordered by the trial judge to do so. Even in documents which Price did file, namely his responses to the earlier motions and his briefs to this Court on appeal, Price never defended his actions which led to this claim. The undisputed fact remains that Price obtained a controlled substance through his own fraud, deception, and subterfuge by misrepresenting his medical history and ongoing treatment to those from whom he sought care. This offense is the central point to every claim on which he rested his already tenuous case, which therefore now completely collapses. Summary judgment was proper, and the trial judge did not commit error in granting each motion for summary judgment. This issue is thus without merit.

## CONCLUSION

¶17. Before today, we have not been confronted with a case factually similar to today's case, where a claimant's case is based in his attempt to obtain a controlled substance through his own malfeasance. This Court's previous cases, which we have discussed, are factually dissimilar from today's case. The defendants have offered similar reasoning from several other

12

jurisdictions deciding cases which did have facts almost identical to those in today's case. *See Foister v. Purdue Pharma L.P.*, 295 F.Supp.2d 693 (E.D. Ky. 2003); *Orzel v. Scott Drug Co.*, 537 N.W.2d 208 (Mich. 1995); *Pappas v. Clark*, 494 N.W.2d 245 (Iowa Ct. App. 1992). We now join those jurisdictions in holding that "the wrongful conduct rule" in Mississippi prevents a plaintiff from suing caregivers, pharmacies, and pharmaceutical companies and laboratories for addiction to a controlled substance which he obtained through his own fraud, deception, and subterfuge. This Court will not lend aid to a party whose cause of action directly results from an immoral or an illegal act committed by that party.

¶18. For these reasons, the final judgments entered in favor of these defendants and against the plaintiff by the Circuit Court of the First Judicial District of Hinds County are affirmed.

¶19. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., AND DICKINSON, J., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**