COLEMAN, Justice,
concurring in part and dissenting in part:
¶ 34. I believe that the majority’s opinion today “dislodge[s] settled rights and expectations” in place when the Legislature enacted Section 31-3-15 and results in the Court de facto substituting its own policy judgments for that of the Legislature and judicially abrogating much of the effect of Section 31-3-15. Therefore, I respectfully concur in part and dissent in part. The Mississippi Legislature enacted Mississippi Code Section 31-3-21. That section of our law, in combination with Section 31-3-2, explicitly makes the conduct of both Ground Control and Capsco illegal and contrary to the public policy of our state. Enactments of substantive law and public policy properly fall within the authority of our Legislature. Dialysis Solutions, LLC v. Mississippi State Dep’t of Health, 96 So.3d 713, 716 (¶ 7) (Miss.2012); Miss. Const. art. 1, § 2 (no member or group of members of one branch of government may exercise powers belonging to another branch); see also Nat’l Fed’n of Indep. Bus. v. Sebelius, - U.S. -, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012) (Justices and judges “possess neither the expertise nor the prerogative to make policy judgments.”). When enacting law, the legislative branch should be able to expect the Court consistently and accurately to apply its own decisions and other laws of the state. Hubbard v. U.S., 514 U.S. 695, 714, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995) (“Stare decisis has special force when legislators or citizens ‘have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response.’ ”).
¶ 35. Without question, the record in the above-styled case establishes that both Ground Control and Capsco acted in contravention of Section 31-3-15 when they entered into a construction contract when both knew that Ground Control did not have the required certification. An affidavit from a Ground Control executive shows that Ground Control knew the requirements of the law, so I do not agree with the majority that Capsco is guilty of fraud in some way. For that to be the case, Ground Control had to in good faith rely on Capsco’s representations that no certificate was necessary. I fail to see how any reliance on the part of Ground Control could be in good faith when Ground Control’s executive admitted Ground Control knew of the statutory requirement. PMZ Oil Co. v. Lucroy, 449 So.2d 201, 206 *377 (Miss.1984) (holding that the Court has always held responsible those who make fraudulent representation to another who “has in good faith relied thereon and been misled to his injury”). In my view, this Court should tread carefully when promulgating authority that appears to allow a private,party, such as Capsco, to waive the requirements of statute, especially when the supposed victim of the fraud knew those requirements.
¶ 86. In any event, I acknowledge that there exists no satisfying outcome here. Neither Capsco nor Ground Control comes before the Court with clean hands, and whatever holding the Court reaches will be unsavory. I agree with the majority that the contract between Capsco and Ground Control is void by operation of Section 31-3-15, but I disagree that Ground Control is entitled to any equitable relief.
¶ 37. If a licensure or regulatory statute is enacted as a matter of public policy and not simply as a prophylactic measure to protect the private right of an individual citizen, private parties have never before been able to side-step legislatively created protections through waiver or estoppel. When the Legislature passed Section 31-3-2, it pulled construction contracts from the realm of mere agreements between private parties into the realm of public policy and concern. I believe that the majority places the private rights of Cap-sco above the interests of the public the Legislature sought to protect, and that in doing so, the majority changes long-standing Mississippi law.
¶ 38. We have held explicitly that the above-stated principle “... applies to contract cases as well, preventing relief on a claim based on a contract that is illegal or against our state’s public policy.” Price v. Purdue Pharma Co., 920 So.2d 479, 484-85 (¶ 13) (Miss.2006) (citing Lowenburg v. Klein, 125 Miss. 284, 87 So. 653, 655 (Miss.1921)); see also Whittington v. H.T. Cottam Co., 158 Miss. 847, 130 So. 745, 749 (1930) (“Contracts in violation of public policy are not voidable, but absolutely void, and the courts will refuse to aid either of the parties.”). The Price Court articulately explained the importance of public policy considerations in the enforcement of contracts.
This Court has long recognized the maxim, from the words of Lord Mansfield, in Holman v. Johnson, 1 Cowper. 341, decided in 1775, ex dolo malo non oritur actio, which means that [n]o Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. Morrissey v. Bologna, 240 Miss. 284, 300-01, 123 So.2d 537, 545 (1960). Nearly a century ago, this Court laid out the rule in Mississippi. If a plaintiff cannot open his case without showing that he has [not] broken the law, a court will not aid him. It has been said that the objection may often sound very ill in the mouth of the defendant, but it is not for his sake the objection is allowed; it is founded on general principles of policy which he shall have the advantage of, contrary to the real justice between the parties. The principle of public policy is that no court will lend its aid to a party who grounds his action upon an immoral or illegal act. The principle has been applied in numerous cases wherein its application seems to have been of doubtful propriety, but the principle as stated is undoubtedly sound in logic, and necessarily affords the true test for the guidance of the courts.
Price, 920 So.2d at 484 (¶ 13). I am unconvinced by the majority’s attempt to distinguish Price by stating simply that it involved a plaintiff “suing for his drug addiction.” (Maj.Op-¶ 10.) In Price, the plaintiff sued multiple defendants on the *378 ground that he had become addicted to OxyContin. Price, 920 So.2d at 481 (¶ 1). The Price Court applied the doctrine of ex dolo malo non oritur actio because the plaintiff’s use of OxyContin violated Mississippi Code Section 41-29-144, which makes acquiring the drug “unlawful.” Id. at 484 (¶ 12). While the result of one violating Section 41-29-144 may differ in consequences from a violation of Section 31-3-15, what matters is that both activities have been declared illegal and have been penalized by the Legislature. Far from being distinguishable, Morrissey v. Bologna, 240 Miss. 284, 123 So.2d 537 (1960), directly apples to the facts now before the Court. The Morrissey Court held that one could not recover money owed under an illegal agreement or contract concerning the sale of whiskey. Id. at 543. The statute upon which the Mor-rissey Court relied voided all notes and securities given to indicate indebtedness incurred in the purchase of intoxicating liquors. The Morrissey Court wrote, “Obviously a court of equity, bound to follow the law, should not permit a person to circumvent completely the provisions of the statute and to make a shambles of the law.” Id. at 544. There is no question that the statute at issue in this case was enacted as a matter of public policy. Mississippi Code Section 31-3-2 states as follows:
The purpose of this chapter, is to protect the health, safety and general welfare of all persons dealing with those who are engaged in the vocation of contracting and to afford such persons an effective and practical protection against incompetent, inexperienced, unlawful and fraudulent acts of contractors.
¶ 39. The majority writes that the purpose of the Section 31-3-15 is to protect both parties to the contract. (Maj.Op-¶ 8.) However, in Section 31-3-2, the statute itself reveals that the purpose of the chapter is not to protect the parties to the contract but to protect “the health, safety and general welfare of all persons dealing with those who are engaged in the vocation of contracting ... against incompetent, inexperienced, unlawful and fraudulent acts of contractors.” In other words, the Legislature’s point in requiring certificates of responsibility is not primarily to protect contractors from one another, but to protect members of the public whose health, safety, and general welfare are threatened by incompetent, inexperienced, unlawful, and fraudulent acts of contractors.
¶ 40. Although not all jurisdictions have addressed the question, I find more persuasive the rule that prohibits any compensation under a claim of equity if the statute in question prohibits the unlicensed contractor from maintaining suit for a breach of the illegal contract as a matter of public policy. See Hydrotech Systems, Ltd. v. Oasis Waterpark, 52 Cal.3d 988, 277 Cal.Rptr. 517, 803 P.2d 370, 379 (1991) (holding that the defendant was not es-topped from raising the defense of illegality in response to a claim of fraud); Romero v. Parker, 146 N.M. 116, 207 P.3d 350 (N.M.App.2009) (holding the defendant is not estopped from raising illegality as a defense to unjust enrichment); Cooper v. Johnston, 283 Ala. 565, 219 So.2d 392 (1969) (citing Ellis v. Batson, 177 Ala. 313, 58 So. 193 (1912) (holding that defendant is not estopped from raising defense of illegality against a claim of breach of implied contract or conversion)).
¶ 41. The rule comports with our state’s law as set forth in Price. As the Price Court acknowledged, enforcement of this rule may indeed sound ill, but the Court should not now change Mississippi’s longstanding law and allow a party which has itself engaged in illegal conduct to find relief. See Price, 920 So.2d at 484 (¶ 13). *379 Neither should we allow a private entity-such as Capsco unilaterally to waive the requirements of Mississippi law. One California court explained such a result as follows:
Where the object of the contract is illegal, courts generally will not enforce it or lend assistance to a party who seeks to benefit from an illegal act. The reason for this refusal is not that the courts are unaware of possible injustice between the parties, and that the defendant may be left in possession of some benefit he should in good conscience turn over to the plaintiff, but that this consideration is outweighed by the importance of deterring illegal conduct. Knowing that they will receive no help from the courts and must trust completely to each other’s good faith, the parties are less likely to enter an illegal arrangement in the first place.
Yuba Cypress Housing Partners, Ltd. v. Area Developers, 98 Cal.App.4th 1077, 1082, 120 Cal.Rptr.2d 273, 277 (Cal.App.2002) (citations omitted) (emphasis added). The principle announced by the Yuba Court explains why I would reject the Nevada case of Magill v. Lewis, 74 Nev. 381, 333 P.2d 717 (1958), cited favorably by the majority. (Maj.Op-¶ 12.) I disagree that the “public cannot be protected” should we deny relief to Ground Control. The public is protected because, as the Yuba Court wrote, illegal conduct such as that of which both Capsco and Ground Control are guilty here will be discouraged in the future if contractors know they can find no help from the courts when they proceed in violation of Section 31-3-15 and must instead rely on each other’s good faith.
¶ 42. In the case sub judice, the majority appears to view Capsco, which the record shows enticed Ground Control into the contract with representations that the certification would not be necessary, as the villain and Ground Control as innocent victim. The majority raises the concern that an absolute bar to recovery would give contractors such as Capsco incentive to search for out-of-state subcontractors, enter into illegal contracts with them, and then refuse to pay them upon completion of the work. In support, the majority cites PMZ Oil Co. v. Lucroy, 449 So.2d 201, 206 (Miss.1984) (holding that the Court has always held responsible those who make fraudulent representation to another who “has in good faith relied thereon and been misled to his injury.”).
¶ 43. As is clear from the above-quoted passage, reliance in good faith is an essential element for a valid claim of fraud. Ground Control is in the business of construction and knew that other states, including its own, required certain certifications it did not have. Ground Control admits that it informed Capsco that it “did not maintain any independent certification or license.” Additionally, the contract signed by Ground Control required Ground Control to obtain all appropriate licenses; yet, Ground Control did not even apply for the certificate.[7] Both parties knowingly attempted to circumvent the law, and it cannot be said that Ground Control relied in good faith upon any representations by Capsco.
¶ 44. Aside from the issue of fraud, Ground Control is also barred from asserting a claim of unjust enrichment.
[ T]he doctrine of unjust enrichment or recovery in quasi contract applies to sit *380 uations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.
Dew v. Langford, 666 So.2d 739, 745 (Miss.1995). The Court must “view the obvious and see whether a resulting or constructive trust may be implied under the facts of [the] case.” Id. I cannot agree with the majority because, pursuant to the rule announced in Price, Lowenburg, and Whittington, no constructive or resulting trust should be inferred by a court in Mississippi when the party requesting relief bases his request on his own illegal act. Put differently, unjust enrichment is an equitable claim, Union National Life Insurance Co. v. Crosby, 870 So.2d 1175, 1180 (¶ 14) (Miss.2004), and a party seeking equitable relief must come to the court with clean hands. “The clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue.” Bailey v. Bailey, 724 So.2d 335, 337 (¶ 6) (Miss.1998); Calcote v. Calcote, 583 So.2d 197, 199-200 (Miss.1991).
¶ 45. Given Ground Control’s misconduct in entering into an illegal contract with Capsco, no equitable relief is available to it. In Thigpen v. Kennedy, 238 So.2d 744, 746-47 (Miss.1970), a husband transferred property to his girlfriend to hide it from his wife during divorce proceedings. Id. at 746. When the husband later sued the girlfriend in an attempt to recover the property, the Court held that the transfer violated the statute of frauds and was “contrary of public policy.” Id. Accordingly, no resulting trust could be said to exist in favor of the husband, and he could claim no relief on grounds of unjust enrichment. Id. The Thigpen Court explained:
The fact that the parties in this case are in pari delicto does not aid appellee. The maxim is not invoked for the benefit of the parties to a fraudulent transaction, but rests upon the proposition that society must be protected. Furthermore, in order for the court to invoke the maxim, it is not necessary for the conduct to be of such a nature as to be punishable as a crime or even to justify legal proceedings of any character. Any wilful act concerning the cause of action which can be said to transgress equitable standards of conduct is sufficient to invoke the maxim.
Id. at 746-747. The majority would allow equitable relief to Ground Control because the majority believes Capsco’s behavior to be more egregious than that of Ground Control. However, as noted above, the record clearly shows that Ground Control knew it was entering into a contract without the necessary certificates and even agreed, but never attempted, to get the certificates. It is not an innocent party. Moreover, I do not believe it to be consistent with our law to allow a party guilty of illegal conduct, as was Ground Control, to come into our courts and circumvent the law because some may find the defendant to be guilty of more reprehensible conduct. Such a possibility has been recognized by this Court for years, and until today, the Court nevertheless has disallowed a party to base a claim for relief on its own illegal and inequitable conduct. Accordingly, I disagree with the majority and believe that no equitable relief is available to Ground Control.
¶46. I do not agree, as my colleague Presiding Justice Dickinson writes, that one must “sense the gross inequity of allowing Capsco — who was aware that *381 Ground Control had no license — to be unjustly enriched from Ground Control’s work and pocket all the payments from the owner, including the portion intended for Ground Control’s labor and materials.” To the contrary, I would hold that Ground Control is precluded from asserting unjust enrichment because it knowingly broke the law and engaged in an illegal contract. As Justice Dickinson writes, there exists no law against the installation of water and sewage lines. There is, however, a law against entering into a contract to do so without the proper certification. The decision to enter into the prohibited contract led Ground Control to do the work at issue and provides the ultimate basis for its cause of action. Justice Dickinson cites no caselaw, and I have found none, that limits the application of the doctrine at issue only to illegal acts that carry with them the potential of incarceration. This case is not one of Ground Control being led down the garden path by Capsco, but one of Ground Control cutting corners and violating Mississippi law to obtain a contract. The record shows that Ground Control made no attempt to obtain the appropriate license, despite having full knowledge of its legal obligation to do so. Furthermore, Ground Control ignored the contractual provision — signed by its agent — mandating that it obtain all required licenses.
¶ 47. Moreover, I agree with Justice Dickinson that Section 31-3-15 in and of itself does no more than void the contract. However, Section 31-3-15 is not the only law of our state that applies to Ground Control’s attempt to come into court and found a cause of action upon its own illegal act. As I write above, the doctrine of ex dolo malo non oritur actio has forbidden such attempts in Mississippi for a century. With respect, neither the majority nor Justice Dickinson has cited sufficient authority to lead me to believe that the Court should now depart from and create an exception to the doctrine. If Justice Dickinson is correct, and a party may base his cause of action on his own illegal act as Ground Control did here, and that party need only show the elements of quantum meruit but not that he enters into court with clean hands, then this Court today effectively overrules Price and its predecessors. For example, the illegal contract for the sale of liquor of Morrissey becomes enforceable via quantum meruit. To reduce his position to a modernized absurdity, if a drug dealer were to convince a junior high student that Mississippi has legalized marijuana sales and then refuse to pay his gullible subcontractor-in-crime, the aspiring miscreant could seek relief in Mississippi’s courts as long as the elements of quantum meruit outlined by Justice Dickinson are met. Before the Court’s decision today, such behavior excluded a party from relief precisely because of the higher need to protect society — the goal the statute informs us the Legislature had in enacting its certification requirement — even when the result may seem unjust. In other words, with the passage of Section 13-3-15, the Legislature turned the focus of the law from protecting the individual parties to the contract to protecting the public. What the majority does today, in my view, protects the individual party at the expense of the public the statute was enacted to protect.
¶ 48. While I agree with the majority that the grant of summary judgment in favor of Yates and Harrah’s should be reversed, I would affirm the trial court’s grant of summary judgment in favor of Capsco. I concur with the majority’s holding that the contract between Capsco and Ground Control is rendered void by Section 31-3-15. However, on the issue of allowing Ground Control to recover on other grounds, I believe the majority reaches *382 a result and creates law that could not have been anticipated by the Legislature when it passed Section 31-3-15, and thereby effectively overrules the statute at least in part by allowing a party such as Ground Control to ignore Mississippi law without any real consequences. Accordingly, I concur in part and dissent in part.
RANDOLPH, P.J., AND PIERCE, J., JOIN THIS OPINION.

. Whatever negotiations took place, it is well-settled law that a complete and unambiguous contract will govern the rights of contracting parties. Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So.2d 400, 403 (Miss.1997) (Mississippi’s “familiar rule of contract interpretation is that a clear and unambiguous contract will be enforced as written.”).