# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00803-COA

FREDERICK SANDROCK, III, JOELLEN
SANDROCK AND JASON SANDROCK

APPELLANTS

v.

CASSIE SANDROCK

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2015 |
| TRIAL JUDGE: | HON. JAMES B. PERSONS |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | RENEE M. PORTER |
| ATTORNEY FOR APPELLEE: | PATRICK TAYLOR GUILD |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 01/16/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND WESTBROOKS, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. On December 26, 2013, Jason Sandrock filed a complaint for declaratory relief and an injunction against his former wife, Cassie Sandrock, and his parents, Frederick Sandrock III (Fred) and Joellen Sandrock.[1] The complaint sought a declaratory judgment that funds Jason had received from insurance and a grant from the Mississippi Development Authority (MDA) after Hurricane Katrina destroyed his home were given to Fred and Joellen as payment for a "Mortgage Agreement," and that he is not required to pay Cassie half of those

---

[1] Although Fred and Joellen were listed as defendants in the action, Jason brought no actual claim against them, and they are now styled as appellants. We will discuss the lengthy and complex procedural history of this case in more detail below.

proceeds, as ordered by the Hancock County Chancery Court in a 2009 divorce judgment. The chancery court denied the complaint. Jason filed a motion to reconsider under Rule 59 of the Mississippi Rules of Civil Procedure, as did Fred and Joellen. The court denied the motions, and Jason, Fred, and Joellen (Appellants) have now joined to appeal the court's judgment, arguing: (1) Fred and Joellen's due-process rights were violated; (2) the divorce judgment was not a final judgment; and (3) Cassie would be unjustly enriched by the payment of the judgment.

¶2. Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶3. The genesis of this appeal began on August 1, 2005, when Jason entered into a one-page notarized "Mortgage Agreement" with his father, Fred, for "one 3300 square foot frame house with a property location of 432 Tarpon Road, Bay St. Louis, MS 39520," in exchange for monthly payments of $1,000, which were to continue for 300 consecutive payments "until $300,000 has been paid in full." Joellen and Cassie were not parties to the agreement. Jason and Cassie had been building the home on his parents' property since November 2004. Before Jason and Cassie could move into the home, however, Hurricane Katrina hit the Mississippi Gulf Coast on August 29, 2005, and the newly built structure was severely damaged. Jason, Fred, and Joellen were issued (as payees) two checks to reimburse the loss – $148,601.98 in insurance proceeds on February 6, 2007, and $149,327.86 in MDA grant money on August 6, 2009. Jason gave the bulk of the proceeds to Fred and Joellen.[2] Cassie

_____

[2] The State Farm insurance policy, dated November 3, 2004, listed Jason as the "Insured" and Fred and Joellen as the "Mortgagees." However, according to the record, the

was not listed as a payee on the checks.

¶4. On January15, 2009, a judgment of divorce was entered between Jason and Cassie. Noting the one-page "agreement," Chancellor Carter Bise nonetheless found "no credible evidence" that Jason owed a debt to his parents for the construction of the home, finding instead that the "funds used to construct the home were a marital gift from [Jason's] parents during the marriage." The court also noted that both Cassie and Jason "worked a significant amount of time on the house." Therefore, in determining the equitable distribution of the marital assets through a *Ferguson*[3] analysis, Chancellor Bise concluded that "Cassie and Jason will divide equally the proceeds from insurance and grant monies," and "Cassie will execute a quitclaim deed" for the subject property to Jason.

¶5. On March 26, 2009, Cassie filed a motion for contempt, as Jason had not paid her the court-ordered judgment. The Appellants state that Jason filed a motion to dismiss the complaint for contempt on August 7, 2009, as well as a counterclaim, requesting the chancery court correct the divorce judgment "to reflect that Tarpon was the property of Fred and Joellen[;] therefore[,] all funds received for Tarpon were paid to them in order to satisfy Jason's mortgage obligation."[4]

¶6. Fred and Joellen filed a motion to intervene in the divorce on May 11, 2009, which the chancery court denied. They did not appeal the court's decision, but subsequently filed

grant application did not indicate any lienholder.

[3] *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994).

[4] Although the motion is not contained in the Court's record, the chancellor's judgment that is before us on appeal notes that this motion was denied.

3

a motion for judicial foreclosure on the property against Jason and Cassie. A week before

a hearing on the motion, on May 9, 2011, Jason filed a motion to continue and a Mississippi

Rule of Civil Procedure 60(b) motion in an attempt to modify the judgment of divorce,

specifically the proceeds he was ordered to pay Cassie. He claimed there was new evidence,

a deposition of Cassie's, that contradicted evidence presented at the divorce trial. He

requested that the chancery court continue the case until the judicial-foreclosure proceedings

were complete. The hearing on the judicial foreclosure was held on May 16, 2011.

¶7.     On February 23, 2012, Chancellor Sanford Steckler issued a corrected nunc pro tunc

judgment, granting Fred and Joellen's request for judicial foreclosure and terminating Jason's

rights in the property (Cassie was not on the deed as a record title holder).[5] But the

chancellor specifically noted:

> The [c]ourt is deciding on the judicial[-]foreclosure issues herein and makes
> no determination as to whether or what effect[,] if any, there is upon the
> divorce judgment between the [d]efendants Jason Sandrock and Cassie
> Sandrock.
>
> . . . .
>
> This [c]ourt does not adjudicate what interest, if any, Cassie Sandrock may
> have in the funds paid by Jason Sandrock to Fred and Joellen Sandrock, and
> further does not adjudicate as to what legal or equitable interest she may have
> in [the] subject property. . . . [N]othing contained herein should be construed
> to conflict with or reverse the decision of Chancellor Carter Bise in the January
> 15, 2009, [j]udgment of divorce between Jason and Cassie Sandrock.

¶8.     On July 12, 2012, Cassie requested the chancery clerk to issue an abstract of the

---

[5] The chancery court's judgment of judicial foreclosure was initially entered on
January 12, 2012, but was "[c]orrected to reflect the current [l]ot numbers in the property
description and to reflect the correct year the [j]udgment was actually signed."

judgment reflecting a judgment in her favor for $147,270.72. Jason responded that she should have enrolled the judgment three years prior and argued that since he had paid the monies "to the mortgage holders," he had no money for the judgment. The judgment against Jason was enrolled on October 29, 2013. The chancery court denied Jason's motion to continue and Rule 60 motion to modify the judgment on November 7, 2013.

## PROCEDURAL HISTORY OF THIS APPEAL

¶9.     Jason filed a complaint for declaratory relief and an injunction on December 26, 2013, naming Cassie, Fred, and Joellen as defendants. In the complaint, he requested that the chancery court declare that "there was a debt owed by Jason to Fred and Joellen" on the property and that he had paid the insurance and grant proceeds to them. He also requested the court find that he "is not required to pay any sums to Cassie" pursuant to the divorce judgment and that Cassie is enjoined from enrolling the judgment against him. Cassie counterclaimed for attorney's fees and sanctions. Fred and Joellen filed no responsive pleading.

¶10.    On March 23, 2015, the chancery court denied Jason's claims and ordered him to pay Cassie "her one-half share of the proceeds collected from insurance and grant monies." Except Jason's assertion that the judgment was not properly enrolled with the chancery clerk, Chancellor Jim Persons determined that Jason's claims were "nearly identical" to the relief sought by Jason in a prior "Counterclaim to Correct Judgment" and Rule 60 motion – both of which had been denied by the chancery court. As Jason had failed to appeal the prior decisions, the chancellor found the 2009 judgment of divorce to be final. He also rejected

any "due process" argument by Fred and Joellen, stating that Jason's parents "made no attempt to intervene in the action until after the divorce judgment was rendered and never filed any appeal of the judgment."[6] The chancery court denied Cassie's request for attorney's fees and sanctions.

¶11.    On March 27, 2015, Jason filed a motion for reconsideration, arguing that some of the court's factual findings were in error and requesting a new trial "so the [c]ourt can hear from Fred and Joellen Sandrock regarding their due[-]process rights and determine that the divorce court violated their rights when it found that no debt was owed by Jason to Fred and Joellen." Although they had filed no response to the complaint for declaratory relief, Fred and Joellen filed a separate Rule 59 motion, arguing essentially the same issues found in Jason's motion for reconsideration and requesting that Jason be granted the relief sought in his complaint. In her response, Cassie challenged the Sandrocks' standing to file any complaint or motion in regard to Jason's complaint, asserting that it was "frivolous and is of no merit."

¶12.    A hearing was held on the motions on April 7, 2016.  While the chancellor granted the motion "only insofar as paragraph 12 [of the prior order] is amended to state that Joellen Sandrock testified as a witness" in the divorce proceedings, he denied the remaining relief sought by the movants.  Jason, Fred, and Joellen have now joined as appellants to appeal the chancery court's denial of Jason's complaint for declaratory relief.

¶13.    Cassie has filed a motion to strike excerpts of the Appellants' brief for failure to cite the record, *see* M.R.A.P. 28(a)(7), and for alleged factual inaccuracies.  While we

---

[6] We note that Fred and Joellen attended the hearing on Jason's complaint as witnesses, but were not represented by counsel.

acknowledge that the Appellants' brief failed to cite the record, requiring Cassie and the Court to spend more time to verify and evaluate the accuracy of the Appellants' claims, we deny Cassie's motion to strike. Instead, we take note of the errors and ensure that the facts as stated in this opinion are accurate.[7]

## STANDARD OF REVIEW

¶14. "We will not disturb a chancellor's factual findings unless the chancellor was manifestly wrong or clearly erroneous or applied an improper legal standard." *Cotton v. Cotton*, 105 So. 3d 1184, 1186 (¶7) (Miss. Ct. App. 2012) (citing *Wallace v. Wallace,* 12 So. 3d 572, 575 (¶12) (Miss. Ct. App. 2009)). Questions of law, however, are reviewed de novo. *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 14 (¶17) (Miss. 2007) (citing *Cummings v. Benderman*, 681 So. 2d 97, 100 (Miss. 1996)).

## DISCUSSION

¶15. The Appellants contend that the chancery court's failure to adjudicate Fred's and Joellen's rights as mortgage holders violated their due-process rights. They also claim the 2009 divorce judgment is not a final judgment, and any payment of the judgment to Cassie would unjustly enrich her.

¶16. Nothing in the record supports the Appellants' claim that the chancery court's award

---

[7] For example, the Appellants have inaccurately asserted throughout their brief that Fred and Joellen, along with Jason, filed the complaint for declaratory relief (e.g., referring to "their complaint" or "their Declaratory Judgment request" and stating "Frederick and Joellen filed their Complaint for Declaratory Relief"). The record shows that Jason was the one who filed the complaint for declaratory relief; Fred and Joellen were named as defendants to this action, which appears to have been a belated attempt to insert them into the litigation originating from the 2009 divorce judgment.

of proceeds to Cassie would cause Fred and Joellen to "lose their investment of $300,000" or "deprive the Sandrocks of their funds." The chancery court granted Fred's and Joellen's motion for judicial foreclosure on the property, and terminated Jason's rights in the property. His parents have also allegedly received the insurance proceeds from Jason.[8] Although they claim that the acknowledgment by the chancery court of the mortgage is inconsistent with the divorce decree, Chancellor Steckler specifically stated that his ruling should not be "construed to conflict with or reverse the decision of Chancellor Carter Bise in the January 15, 2009, [j]udgment of divorce between Jason and Cassie Sandrock."

¶17. Moreover, as the chancellor also noted, Fred and Joellen never appealed the chancery court's denial of their motion to intervene. And as Cassie notes, Jason's parents, "despite being served, never joined in the relief sought by Jason, never filed any type of responsive pleading, never filed a counter-complaint, and never filed a cross-claim." Thus, she argues that "to the extent [Fred and Joellen] were 'prejudiced,' the trial court had no pleading in front of it for which to grant or deny relief." It was not until the chancellor denied Jason's complaint that Fred and Joellen filed a separate motion to reconsider. We find no abuse of discretion in the chancery court's finding that the "argument that the due[-]process rights of Fred[] and Joellen Sandrock were violated is without merit."

¶18. As to the denial of Jason's claims, under Rule 57(a) of the Mississippi Rules of Civil Procedure, "[c]ourts of record within their respective jurisdictions may declare rights, status,

---

[8] The 2009 judgment did not require Fred and Joellen to pay Cassie; it required Jason to do so. If Jason did, in fact, pay his parents the grant proceeds that he received after the court ordered him to divide the proceeds equally, then he did so to his own detriment.

8

and other legal relations regardless of whether further relief is or could be claimed." M.R.C.P. 57(a). On the other hand, a trial court may deny a complaint for declaratory judgment "where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding." *Id*. Noting that Jason failed to appeal the 2009 divorce judgment, and Fred and Joellen did not appeal the denial of their motion to intervene, Chancellor Persons held:

> Once a judgment becomes final, it is dispositive as to all issues arising from a claim that were, or could have been, asserted by the parties to the litigation. *Trilogy Communications, Inc. v. Thomas Truck Lease, Inc.*, 790 So. 2d 881[, 885 (¶12)] (Miss. Ct. App. 2001).
>
> With the exception of Jason's additional claims that the divorce judgment was not properly enrolled, the relief requested by Jason in his Complaint for Declaratory Relief is nearly identical to the relief that he sought in his [c]ounter[c]laim to [c]orrect [the] judgment, and similar to the claim that he made in his Rule 60 motion, both of which were denied by the [c]ourt.
>
> In the absence of any timely[]filed notice of appeal or any pending appeal action filed on behalf of Jason Sandrock or Fred[] and Joellen Sandrock seeking relief from either the Judgment of Divorce or from the Order which denied intervention in the divorce action, the Final Judgment of Divorce, including the [s]tipulation executed by the parties, is a valid [j]udgment upon which this [c]ourt relies and upon which the parties are bound.

Subsequently, in his bench ruling denying the Appellants' motions for reconsideration, the chancellor concluded:

> The [c]ourt and the law seek[] finality. We have two judgments, both of which are final. To the extent they're in conflict, no one appealed. In essence, you can't do what should have been an appeal now in a declaratory judgment action, which, in essence, we have the issues [of] res judicata, law of the case, all sorts of the legal doctrines here that prohibit us – or me from reopening these things.

¶19. We find no abuse of discretion in the chancery court's findings. The Mississippi

9

Supreme Court has held that "[a] final judgment on the merits of an action precludes the parties and their privies from relitigating claims that were or could have been raised in that action." *Walton v. Bourgeois*, 512 So. 2d 698, 701 (Miss. 1987). "A final judgment has been defined by this Court as a judgment adjudicating the merits of the controversy [that] settles all the issues as to all the parties." *Sanford v. Bd. of Supervisors*, 421 So. 2d 488, 490-91 (Miss. 1982) (citations omitted). "[A]n order is considered final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *LaFontaine v. Holliday*, 110 So. 3d 785, 787 (¶8) (Miss. 2013). Jason's complaint is, quite simply, a collateral attack on the 2009 divorce judgment, which awarded one-half of the insurance and grant proceeds to Cassie. The 2009 judgment, despite the Appellants' argument to the contrary, is a final judgment. While not contained in the record, the chancery court noted that Jason had filed a counterclaim to correct the judgment, which was denied by the court. His Rule 60 motion was also denied. He did not appeal either decision. Thus, his request for declaratory relief is barred. The supreme court has held: "Res judicata bars all issues that might have been (or could have been) raised and decided in the initial suit, plus all issues that were actually decided in the first cause of action." *Little v. V & G Welding Supply Inc.*, 704 So. 2d 1336, 1337 (¶8) (Miss. 1997) (citation omitted). Additionally,

> [r]es judicata is fundamental to the equitable and efficient operation of the judiciary and "*reflects the refusal of the law to tolerate a multiplicity of litigation*." *Little* . . ., 704 So. 2d [at] 1337 [(¶8)]. . . . The courts cannot revisit adjudicated claims and "all grounds for, or defenses to recovery that were available to the parties in the first action, regardless of whether they were asserted or determined in the prior proceeding, are barred from re[]litigation in a subsequent suit under the doctrine of res judicata." *Alexander v. Elzie,* 621 So. 2d 909, 910 (Miss. 1992).

*Harrison v. Chandler-Sampson Ins.*, 891 So. 2d 224, 232 (¶23) (Miss. 2005) (emphasis added).

¶20.    For res judicata to apply, four identities must be present: "(1) identity of the subject matter of the action; (2) identity of the cause of/civil action; (3) identity of the parties to the cause of/civil action; and (4) identity of the quality or character of a person for or against whom the claim is made." *Miller v. Miller*, 838 So. 2d 295, 297 (¶5) (Miss. Ct. App. 2002) (citations omitted).  Here, the first two identities – the subject matter and the cause of action, namely the underlying facts and circumstances – are the same.  In both the 2009 divorce judgment and the complaint for declaratory relief, Jason and Cassie are parties. The only difference between the two causes of action is that Jason added Fred and Joellen as defendants to the second cause.  But since Jason made no claims against them, and they never acted as adverse parties to Jason (as evidenced by the fact they are now joined with him as appellants), we find the third identity requirement is met.  As to the fourth identity, Cassie was named as a defendant in both causes of action.  Therefore, we find all four identities are present.

¶21.    Accordingly, we affirm the chancery court's denial of Jason's complaint for declaratory relief.

¶22.    **AFFIRMED.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**